Mishelle SANDERS, Plaintiff,

v.

SOUTHWEST AIRLINES CO., a Texas corporation, and Tammy O'Bryan, individually and in her representative capacity as an agent/employee of Southwest Airlines Co., jointly and severally, Defendants.

No. 98–40424.

United States District Court, E.D. Michigan, Southern Division.

Feb. 16, 2000.

 
 
 
 

 
 
 
 

 
 
 
 

 
 
 
 

 
 
 
 

 
 
 
 

 
 
 

Carolyn G. Keemer, Sean M. Tate, Bloomfield Law Center, Bloomfield, MI, for Mishelle Sanders, plaintiff.

David R. Baxter, Paskin, Nagi, Detroit, MI, for Southwest Airlines, Incorporated, defendant.

## MEMORANDUM OPINION AND OR-DER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDG-MENT

GADOLA, District Judge.

Before the Court is a motion by Defendants Southwest Airlines Co. and Tammy O'Bryan for summary judgment filed November 15, 1999. For reasons stated below, this Court grants Defendants' motion.

### Factual Background

Plaintiff Mishelle Sanders describes herself in her Complaint as "an African Amer-ican teenager, who resides in the City of Wayne, Wayne County, State of Michigan." (Compl. ¶ 1.) Defendants are Southwest Airlines Co. ("Southwest"), a Texas corporation, and Tammy O'Bryan, a flight attendant employed by Southwest. Defendant O'Bryan was the lead flight attendant for the flight on which Plaintiff was a passenger.

On June 21, 1998, Plaintiff was a passenger on Defendant Southwest's flight number 438 from St. Louis to Detroit. Plaintiff was seated in the first row at the front of the aircraft. Plaintiff was traveling with a group of teenage young adults with whom she interacted throughout the flight. Defendant O'Bryan stood next to or very close to Plaintiff as she was giving pre-flight instructions over the microphone. Plaintiff was close enough that she could hear the instructions without the microphone.

In the course of the approximate two hour flight, there were several interactions between Plaintiff and Defendant O'Bryan. First, when Defendant O'Bryan was giving instructions over the microphone, Plaintiff was talking with her traveling companions. According to Plaintiff, Defendant O'Bryan asked Plaintiff and her group to "shut up" because the flight attendant was on the microphone and could not hear over Plaintiff's conversation. (Pl.'s Dep. at 124–25.) Second, later in the flight, Plaintiff was throwing a chewing gum wrapper at one of her traveling companions and Defendant O'Bryan asked Plaintiff to stop. (Pl.'s Dep. at 141–43.) Third, Defendant O'Bryan glared at Plaintiff after O'Bryan heard Plaintiff criticize one of Plaintiff's companions for saying "thank you" to Defendant O'Bryan. (Pl.'s Dep. at 144–45.) Fourth, Plaintiff made remarks and gestures to her companions that intimidated Defendant O'Bryan. (Defs.' Ex. B, O'Bryan Aff. ¶ 7.)

Defendant O'Bryan reported to the flight crew Plaintiff's interference with her duties and responsibilities. (O'Bryan Aff. ¶ 8.) The flight crew reported the matter

to the Southwest customer service personnel at Detroit Metropolitan Airport. (Defs.' Ex. C, Curry Aff. ¶ 3.) Marie Curry, Southwest's customer service supervisor, responded to the report by going to the gate accompanied by Wayne County Airport Police whom she happened to meet along the way. (Curry Aff. ¶¶ 3–5.)

Plaintiff was the first to exit the plane. (Pl.'s Dep. at 148.) According to Plaintiff, three police officers surrounded her. (Pl.'s Dep. at 151.) Curry and the police questioned Plaintiff for five to ten minutes and she was allowed to leave after she presented her identification and police ran a lien. (Pl.'s Dep. at 158; Curry Aff. ¶¶ 5–6.)

According to Plaintiff, while she was being questioned no one made fun of her, harassed her, yelled or screamed at her, intimidated her, or even shook a finger at her. (Pl.'s Dep. at 70–71.) Plaintiff has never talked to a mental health counselor as a result of the incident. (Pl.'s Dep. at 63.) When asked what are the activities in which she now cannot participate because of this incident, Plaintiff responded that she does not attend balls at school (such as those hosted by sororities or fraternities) and has not joined any clubs. (Pl.'s Dep. at 167–68.) When asked whether the incident in any way affected her performance at school, Plaintiff stated "Maybe somewhat a little." (Pl.'s Dep. at 63.)

## Procedural Background

In November, 1998, Plaintiff filed a law suit in the Circuit Court for the County of Wayne alleging the following claims for relief: Defendants violated the Elliott–Larson Civil Rights Act, M.C.L. § 37.2101, et seq., by discriminating against her on the basis of race (Count I); Defendants were grossly negligent or negligent in breaching a duty not to violate the anti-discrimination laws of the State of Michigan (Count II); Defendants intentionally inflicted emotional distress (Count III); Defendant Southwest was negligent in hiring or retaining Defendant O'Bryan (Count IV); and, Defendant Southwest was negligent in supervising their employees (Count V). Defendant removed the case to this Court on December 18, 1998.[1]

Discovery closed in this case on October 25, 1999. It appears to the Court, however, that Plaintiff did not undertake any discovery; i.e., Plaintiff did not notice or take any depositions, did not submit any requests to produce, interrogatories, or requests for admissions. According to Defendants, Defendants' depositions of Plaintiff and her mother constitute the only discovery in this case.

## Discussion

### 1. Standard for summary judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91

---

1. This Court's subject matter jurisdiction is premised upon diversity of citizenship and the existence of a matter in controversy which "exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). Because Plaintiff pled in excess of this statutory minimum in her Complaint—in apparent violation of Michigan Court Rule 2.111(B)(2)—this Court can remand only "if, from the face of the pleadings, it is apparent, *to a legal certainty,* that the plaintiff never was entitled to recover that amount...." *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938) (emphasis added); *see Havener v. Richardson,* No. 98–1971, 1999 WL 993757 (6th Cir. Oct.18, 1999). This Court cannot say "to a legal certainty" that Plaintiff never was entitled to recover the amounts pled in her Complaint. Therefore, this Court has jurisdiction over this civil action.

L.Ed.2d 265 (1986); *Martin v. Ohio Turn-pike Commission,* 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party. *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). The court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, where a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.; Feliciano v. City of Cleveland,* 988 F.2d 649, 654 (6th Cir.1993).

■ Once the moving party carries its initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. As the United States Supreme Court has stated:

> [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249–50 (citations omitted); *see Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transportation Service, Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990) (Gadola, J.), *aff'd,* 929 F.2d 701 (6th Cir.1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *see Cox v. Kentucky Department of Transportation,* 53 F.3d 146, 150 (6th Cir.1995).

**2. Analysis**

Defendant moves for summary judgment on each of the five counts in the Complaint. The Court will consider the appropriateness of summary judgment on each count.

**a. Plaintiff's Elliott–Larson Civil Rights Act claim (Count I)**

■ Plaintiff alleges that Defendants violated the Elliott–Larson Civil Rights Act, M.C.L. § 37.2101, et seq., by discriminating against her on the basis of race. The Elliott–Larsen Civil Rights Act states that:

> Except where permitted by law, a person shall not ... [d]eny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status.

M.C.L. § 37.2302(a). The Elliott–Larsen Civil Rights Act defines "place of public accommodation" as:

a business, or an educational, refreshment, entertainment, recreation, health, or transportation facility, or institution of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public.

M.C.L. § 37.2301(a).

Defendant Southwest argues that it is a place of public accommodation up to the time that a passenger purchases a ticket and afterwards becomes a "ticketed accommodation" that is subject to the private contractual relationship between the airline and the ticket holder. Defendants liken this to the sale of insurance contracts in *Kassab v. Michigan Basic Property Insurance Association,* 441 Mich. 433, 491 N.W.2d 545 (1992). In *Kassab,* the Michigan Supreme Court held that a claim for breach of an insurance contract could not be brought under the Elliott–Larsen Civil Rights Act because the terms of the policy, once issued, are no longer "services … made available to the public" but are private rights and obligations of the contracting party. *See* 441 Mich. at 441–42, 491 N.W.2d 545.

While the Michigan Supreme Court has not ruled on the exact issue presented here, Defendants' argument seems off the mark. If an airline were to deny "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations" to a passenger on the basis of religion, race, color, national origin, age, sex, or marital status once he was on board the airplane, it seems reasonable that he should be able to bring a claim under the Elliott–Larsen Civil Rights Act and that it would not be an adequate defense to argue that the contractual relationship between the airline and ticketed passenger did not prohibit such discrimination.

The Court, however, need not rule on this basis. In order to maintain her claim in Count I, Plaintiff must show that she was denied "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations … because of race." M.C.L. § 37.2302(a).

To prove race discrimination, Plaintiff may prove either intentional discrimination or disparate treatment by Defendant. *See Reisman v. Regents of Wayne State University,* 188 Mich.App. 526, 538, 470 N.W.2d 678, 685 (1991); *see also Meagher v. Wayne State University,* 222 Mich.App. 700, 708–09, 565 N.W.2d 401, 409–10 (1997) (explaining that intentional discrimination and disparate treatment are different methods of proving discrimination but not separate theories). Intentional discrimination may be proved by showing that the plaintiff is a member of a protected class, that the decision-maker had a pre-disposition to discriminate against members of the protected class, and the decision-maker acted on that pre-disposition. *See Reisman,* 188 Mich. App. at 538, 470 N.W.2d at 685. Disparate treatment may be proved by showing that the plaintiff is a member of a protected class and was treated differently than persons of a different class for the same or similar conduct. *Id.* Under either theory, a plaintiff claiming that an action is motivated by discrimination must produce some facts from which a factfinder could reasonably infer unlawful motivation. *See Fonseca v. Michigan State University,* 214 Mich.App. 28, 31, 542 N.W.2d 273, 275 (1995).

Here, Plaintiff is a member of a protected class. Plaintiff, however, has failed to produce any evidence that Defendants had a pre-disposition to discriminate against members of that protected class. Plaintiff also has failed to show that she was treated differently than persons of a different class for the same or similar conduct. Absent such evidence, Plaintiff cannot make out a claim under the Elliott–Larsen Civil Rights Act. Therefore, this Court will grant Defendants' motion for summary judgment with respect to Count I.

### b. Plaintiff's gross negligence/negligence claim (Count II)

Plaintiff alleges that Defendants were grossly negligent or negligent by breaching a "duty not to violate the discrimination laws of the State of Michigan." (Compl.¶ 29.) According to Plaintiff, Defendants breached that duty "by furnishing Plaintiff's name to the Wayne County Police Department as the aggressor of a fight." (Compl.¶ 30.)

■ First, the claim for relief in Count II appears, in essence, to be the same as that in Count I. Defendants' "duty not to violate the discrimination laws of the State of Michigan" cannot be separated from Defendants' requirement to adhere to the anti-discrimination laws of the State of Michigan such as the Elliott–Larsen Civil Rights Act. In general, a violation of an anti-discrimination law is not a separate claim from a breach of a duty to comply with that law.

■ Second, even if this were a separable claim, in order to prove gross negligence, Plaintiff would have to show that Defendants' conduct was "so reckless as to demonstrate a substantial lack of concern for whether an injury results." *See Jennings v. Southwood*, 446 Mich. 125, 136, 521 N.W.2d 230, 235 (1994). In order to prove negligence, Plaintiff would have to show Defendants' duty to Plaintiff, Defendants' breach of that duty, that the breach was the proximate cause of Plaintiff's injury, and that Plaintiff was injured. *See generally Moning v. Alfono*, 400 Mich. 425, 437, 254 N.W.2d 759, 764 (1977). "Negligence is conduct involving an unreasonable risk of harm." 400 Mich. at 433, 254 N.W.2d at 762.

Federal law provides that, "[n]o person may ... interfere with a crewmember in the performance of the crewmember's duties aboard an aircraft being operated." 14 C.F.R. § 91.11; *see also* 49 U.S.C. § 46504 (providing for criminal penalties for interfering with a flight crewmember's duties). Federal law requires, as part of a flight crewmember's duties, that he or she provide passengers with a detailed oral briefing prior to take-off. *See* 14 C.F.R. § 121.571. Defendants have produced evidence that Plaintiff interfered with Defendant O'Bryan's duties, (O'Bryan Aff. ¶ 7), and Plaintiff has produced no evidence in response. Certainly, reporting someone suspected of interfering with a crewmember's duties does not amount to breach of a duty, much less a reckless breach of a duty. There is no evidence of "conduct involving an unreasonable risk of harm" apparent here. Therefore, this Court will grant Defendants' motion for summary judgment with respect to Count II.

### c. Plaintiff's intentional infliction of emotional distress claim (Count III)

■ The elements of a claim of intentional infliction of emotional distress are: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. *See Roberts v. Auto–Owners Insurance Co.*, 422 Mich. 594, 602, 374 N.W.2d 905, 908 (1985); *Ross v. Burns*, 612 F.2d 271, 273 (6th Cir.1980). The Michigan Supreme Court set forth "the prevailing view" of what constitutes "extreme and outrageous" conduct, which includes that:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community....
>
> \* \* \* \* \* \*
>
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion

for the law to intervene in every case where some one's feelings are hurt.

*Roberts*, 422 Mich. at 603, ·374 N.W.2d at 908–09 (quoting *Restatement (Second) of Torts* § 46 cmt. d (1965)).

The allegations in the Complaint, when read in a light most favorable to Plaintiff, cannot support a finding that Defendants' conduct was extreme and outrageous. At worst, Defendant O'Bryan's behavior amounts to inconsiderate or unkind acts— e.g., insults, indignities, threats, annoyances, petty oppression—which are by definition neither extreme nor outrageous. Furthermore, Plaintiff has no evidence of *severe* emotional distress. Therefore, Plaintiff cannot make out a prima facie case of intentional emotional distress. Accordingly, this Court will grant Defendants' motion for summary judgment with respect to Count III.

### d. Plaintiff's negligent hiring/retention claim (Count IV) and negligent supervision claim (Count V)

In order to support Plaintiff's claims, she must present evidence of the appropriate standard for hiring, retaining, or supervising professional flight personnel, *see Poe v. City of Detroit*, 179 Mich. App. 564, 578, 446 N.W.2d 523, 530 (1989), *Smith v. Merrill Lynch Pierce Fenner & Smith*, 155 Mich.App. 230, 235, 399 N.W.2d 481, 483–83 (1986), and that Defendant Southwest knew or should have known that Defendant O'Bryan was likely to act harmfully toward Plaintiff, *see Hersh v. Kentfield Builders, Inc.*, 385 Mich. 410, 415, 189 N.W.2d 286, 289 (1971). Plaintiff has no evidence of the appropriate standard and no evidence of what Defendant Southwest knew or should have known. In short, Plaintiff has no evidence to support a showing of negligence in hiring, retaining, or supervising Defendant O'Bryan or any other employee.

Plaintiff's entire response to Defendants' motion for summary judgment on Counts IV and V is as follows:

Defendant failed to act appropriately in the instant case which is evidence of failure to properly supervise. Defendant called the authorities for no apparent reason. Defendant deals with the public in her job on a daily basis and acted in a rude, impolite and unprofessional manner. It took the police to handle the situation appropriately and advise Plaintiff to continue on her way.

(Pl.'s Resp. at 8.) Because Plaintiff has presented no evidence to support a showing of negligence in hiring, retaining, or supervising Defendant O'Bryan, this Court will grant Defendants' motion with respect to Counts IV and V.

### Conclusion

Accordingly, this Court being fully advised in the premises,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [Docket Entry 9] is **GRANTED**.

**IT IS FURTHER ORDERED** that this civil action is **DISMISSED**.

**SO ORDERED.**