**Michelle VERRAN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 02–73337.**

United States District Court, E.D. Michigan, Southern Division.

Feb. 23, 2004.

Scott P. Batey, Esq., Bingham Farms, for plaintiff.

Peter A. Caplan, Esq., Terri T. Thomas, Esq. AUSA Detroit, for defendant.

## *OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS*

ROSEN, District Judge.

### I. INTRODUCTION

Plaintiff Michelle Verran commenced this suit in this Court on August 16, 2002,

asserting claims against the Defendant United States of America under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, stemming from the brutal assault and rape of Plaintiff by Sergeant Robert Johnson, a United States Marine Corps recruiter.[1] This Court has exclusive jurisdiction over this action pursuant to 28 U.S.C. § 1346(b).

As Defendant acknowledges, this is "a disturbing and sordid case," (Defendant's Motion to Dismiss, Br. in Support at 1), involving allegations of extreme brutality by a U.S. military officer at a Marine Corps recruiting office. Nonetheless, by a motion filed on November 6, 2002, and a renewed motion filed on February 18, 2003, Defendant seeks the dismissal of Plaintiff's claims under the intentional tort exception to the FTCA, 28 U.S.C. § 2680(h). Under this statutory provision, claims "arising out of" an assault, battery, or other enumerated intentional torts are excluded from the reach of the FTCA, and hence are barred by sovereign immunity. Defendant argues that Plaintiff's various formulations of her claims in this case, under such tort theories of recovery as premises liability, negligent supervision, and nuisance, all fail to take this case outside the intentional tort exclusion. In responses filed on December 12, 2002 and April 14, 2003, and through an amended complaint filed on January 21, 2003, Plaintiff asserts that she has pled theories of recovery and supporting allegations that avoid the intentional tort exclusion, and that instead rest upon independent duties owed to Plaintiff by fellow government employees of Sergeant Johnson. Defendant filed a reply brief in further support of its motion on January 7, 2003.

1. Plaintiff's initial complaint referenced a number of additional governmental defendants. In an amended complaint filed on January 21, 2003, however, Plaintiff names the United States as the sole Defendant.

On October 30, 2003, the Court held a hearing on Defendant's initial and renewed motions to dismiss. Having reviewed the parties' written submissions and the record as a whole, and having considered the arguments of counsel at the October 30 hearing, the Court now is prepared to rule on Defendant's motions. For the reasons set forth below, the Court finds that Plaintiff's claims fall victim to an unfortunate confluence of Michigan's premises liability law and the FTCA's intentional tort exclusion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Under the present procedural posture, the Court accepts as true the allegations of the complaint. In particular, the Court looks primarily to the First Amended Complaint filed on January 21, 2003.

In August of 1999, Plaintiff Michelle Verran met Sergeant Robert Johnson of the United States Marine Corps at a local fair. Johnson introduced himself as a Marine Corps recruiter who was working at a recruiting booth at the fair. The two became friendly, and saw each other regularly over the next several months. This relationship was wholly personal; there is no indication that Verran was contemplating enlistment in the military.

On November 4, 2000, Sergeant Johnson lured Plaintiff to a Marine Corps recruiting office in Lapeer, Michigan where he was assigned at the time, under the guise that Plaintiff could observe Johnson as he met with a recruit and delivered his recruiting pitch. When Plaintiff arrived at the office, however, only Johnson was present, and no recruits. Johnson proceeded to pull Plaintiff into a back room and brutally rape her with his fist. When Johnson was finished with this assault, he removed Plaintiff from the recruiting office, where she was left to find her way home. Plaintiff nearly bled to death as a result of the injuries sustained in the rape.

According to the complaint, Navy and Marine Corps officials were fully aware that Sergeant Johnson had a history of excessive drinking, harassment, and physical assaults of women. Plaintiff alleges, upon information and belief, that Johnson was removed from his prior position with the Marine Corps as a result of his excessive drinking and abusive treatment of women. Plaintiff further alleges that the Navy and Marine Corp "received multiple reports from no fewer than five women complaining that Sergeant Johnson had harassed and physically assaulted them." (First Amended Complaint at ¶ 12.) [2]

Based on these allegations, Plaintiff's First Amended Complaint asserts four theories of recovery. First, Plaintiff advances a premises liability claim, alleging that she had the status of an invitee at the Lapeer recruiting office on the day of Sergeant Johnson's assault, and that Johnson's presence at this office constituted an "unsafe and dangerous condition on the premises" that gave rise to a duty to inform Plaintiff of this condition or make the premises safe. (First Amended Complaint at ¶¶ 17, 24–25.) Count II of the complaint is similar, alleging that two particular Navy officers, Scotty Arias and Kenneth Kuchler, worked at the Lapeer recruiting office, knew of Sergeant Johnson's propen-

---

**2.** In support of this allegation, Plaintiff has attached various incident reports as exhibits to her response to Defendant's motion. Defendant's reply brief, in turn, is supported by further materials bearing upon these past incidents. If the Court were to consider these materials, it necessarily would have to treat Defendant's motion as seeking summary judgment under Fed.R.Civ.P. 56. See Fed. R.Civ.P. 12(b). The Court elects not to do so, however, and instead accepts as true the allegations of the complaint.

sity for harassing and physically assaulting women, and yet failed to discharge their affirmative duties to warn Plaintiff about Johnson's propensities and to exercise reasonable care to keep the premises safe.

Under Count III, Plaintiff alleges that the United States Marine Corps and the Department of the Navy negligently hired and failed to properly supervise Sergeant Johnson, in light of his known history of harassment and physical assault of women. Finally, in Count IV of the First Amended Complaint, Plaintiff alleges that Sergeant Johnson's presence and conduct at the Lapeer recruiting office constituted a nuisance that Defendant was obliged to abate but did not.

## III. *ANALYSIS*

### A. The Standards Governing Defendant's Motion

Defendant has moved for the dismissal of all of Plaintiff's claims pursuant to Fed. R.Civ.P. 12(b)(1) and 12(b)(6). Regarding the first of these rules, Fed.R.Civ.P. 12(b)(1), Defendant has mounted a wholly facial challenge to the subject matter jurisdiction of the Court—that is, Defendant has "question[ed] the sufficiency of the pleading" as a basis for establishing the Court's jurisdiction. *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir.1990). In resolving such a jurisdictional challenge, the Court "takes the allegations in the complaint as true," and determines whether the facts as alleged give rise to a claim within the Court's subject matter jurisdiction. 922 F.2d at 325. "Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Regional Transit Auth.,* 895 F.2d 266, 269 (6th Cir.1990).

Next, in considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, the Court is required to accept as true the well-pleaded factual allegations set forth in Plaintiff's complaint. *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987); *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). However, the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan,* 829 F.2d at 12. "Under Rule 12(b)(6), a complaint may be dismissed only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." 829 F.2d at 12 (footnote, internal quotations and citations omitted). The Court will apply these standards in resolving Defendant's motion.

### B. Plaintiff's Various Theories of Recovery Are Defeated by a Combination of Michigan Tort Law and the Intentional Tort Exception to the Federal Tort Claims Act.

#### 1. The General Statutory Framework of the Federal Tort Claims Act and Its Intentional Tort Exclusion.

It is a familiar principle that the United States enjoys sovereign immunity from suit except to the extent that it consents to be sued. *See United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983). Moreover, "the existence of consent is a prerequisite for jurisdiction," *Mitchell,* 463 U.S. at 212, 103 S.Ct. at 2965, and any "waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign," *Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092, 2096, 135 L.Ed.2d 486 (1996).

By its express terms, the Federal Tort Claims Act ("FTCA") constitutes a limited

waiver of the federal government's sovereign immunity. Specifically, it provides:

> [T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ..., for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). This consent to suit is limited in various respects, however. Of particular relevance here, it does not extend to "[a]ny claim arising out of assault, battery," or various other intentional torts. 28 U.S.C. § 2680(h).

Consequently, as to the most plain and egregious instance of lawlessness alleged in this case, Sergeant Johnson's brutal rape and assault of Plaintiff, it is evident that any recovery from Defendant is barred by the FTCA's intentional tort exclusion. Plaintiff acknowledges as much, omitting any sort of assault claim from her complaint, and disclaiming any reliance on Johnson as the source of the "negligent or wrongful act or omission" that would permit her claims against Defendant to go forward. Instead, Plaintiff's overarching theory of liability rests upon the proposition that various government agencies and officials were aware of Sergeant Johnson's violent propensities in his conduct toward women, and that this knowledge gave rise to a duty to warn Plaintiff of and protect her from the danger that Johnson posed. Against this backdrop, the Court considers Plaintiff's claims and allegations in light of the terms of the FTCA and the relevant federal and state precedents.

## 2. The Michigan Law of Premises Liability, Negligent Hiring/Supervision, and Nuisance.

As noted, the FTCA provides that the federal government is liable for the negligent or wrongful acts or omissions of its employees "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Accordingly, in this case, Plaintiff's claims can go forward only to the extent that Michigan law provides a basis for the imposition of liability under the facts alleged in the complaint. In aid of this effort, Plaintiff's First Amended Complaint cites the Michigan law of premises liability, negligent hiring and supervision, and nuisance. Before turning to the FTCA's intentional tort exclusion, therefore, the Court first summarizes the pertinent Michigan law as to each of these tort theories of recovery.

Regarding premises liability, the Michigan Supreme Court recently examined the scope of a premises owner's duty in *MacDonald v. PKT, Inc.*, 464 Mich. 322, 628 N.W.2d 33 (2001). In each of the two consolidated cases before the Court, the plaintiff had been struck and injured by sod ripped from the lawn of the Pine Knob Music Theater and thrown by a fellow concertgoer. As to one of these cases, at least, there was ample evidence that sod-throwing was foreseeable—the event coordinator had a policy in place before the performance dictating the appropriate response to such conduct, evidence was introduced of two prior sod-throwing incidents at this same venue, and the plaintiff was struck during the second episode of sod-throwing in a single evening. Under these circumstances, the lower courts resolved the plaintiffs' premises liability

claims under a foreseeability analysis, holding in one case that the sod-throwing incident was foreseeable and in the other that it was not.

The Michigan Supreme Court rejected this analysis, and instead adhered to, and perhaps even extended, its prior decisions sharply limiting a premises owner's duty as to criminal acts on its premises. In particular, the Court reiterated its ruling in earlier cases that "a merchant has no obligation generally to anticipate and prevent criminal acts against its invitees." *MacDonald,* 628 N.W.2d at 38. The Court explained:

> [W]e have never recognized as "foreseeable" a criminal act that did not ... arise from a situation occurring on the premises under circumstances that would cause a person to recognize a risk of imminent and foreseeable harm to an identifiable invitee. Consequently, a merchant's only duty is to *respond* reasonably to such a situation. To hold otherwise would mean that merchants have an obligation to provide what amounts to police protection, a proposition that we soundly rejected in [prior cases]. To the extent that, in [one of the Court's prior decisions], we relied upon evidence of previous shootings at the bar in assessing whether a reasonable jury could find that the ... plaintiff's injury was foreseeable, we now disavow that analysis ....
>
> A premises owner's duty is limited to responding reasonably to situations occurring on the premises because, as a matter of public policy, we should not expect invitors to assume that others will disobey the law. A merchant can assume that patrons will obey the criminal law. This assumption should continue until a specific situation occurs on the premises that would cause a reasonable person to recognize a risk of imminent

harm to an identifiable invitee. It is only a present situation on the premises, not any past incidents, that creates a duty to respond.

> Subjecting a merchant to liability solely on the basis of a foreseeability analysis is misbegotten. Because criminal activity is irrational and unpredictable, it is in this sense invariably foreseeable everywhere. However, even police, who are specially trained and equipped to anticipate and deal with crime, are unfortunately unable universally to prevent it. This is a testament to the arbitrary nature of crime. Given these realities, it is unjustifiable to make merchants, who not only have much less experience than the police in dealing with criminal activity but are also without a community deputation to do so, effectively vicariously liable for the criminal acts of third parties.

*MacDonald,* 628 N.W.2d at 39 (citations omitted).

Turning to Plaintiff's next theory of recovery, that Defendant negligently hired and supervised Sergeant Johnson in his role as recruiter, the Michigan courts have not dealt extensively with this species of tort. Nonetheless, the Michigan Supreme Court has recognized that "[a]n employer who knew or should have known of his employee's propensities and criminal record before commission of an intentional tort by [this] employee upon [a] customer who came to [the] employer's place of business would be liable for damages to such customer." *Hersh v. Kentfield Builders, Inc.,* 385 Mich. 410, 189 N.W.2d 286, 288 (1971). Likewise, other courts, including this one, have noted that Michigan recognizes a tort theory of negligent hiring or retention of employees. *See, e.g., Nesbary v. Gerber Products Co.,* 956 F.2d 1164, 1992 WL 42350, at *2 (6th Cir. Mar.3, 1992); *Sanders v. Southwest Airlines Co.,*

86 F.Supp.2d 739, 746 (E.D.Mich.2000); *Isely v. Capuchin Province,* 880 F.Supp. 1138, 1146 (E.D.Mich.1995).

██ ██ To sustain such a claim, a plaintiff must produce evidence "of the appropriate standard for hiring, retaining, or supervising" the relevant class of employee, *Sanders,* 86 F.Supp.2d at 746, as well as evidence demonstrating that the employer knew or should have known of the employee's propensity to engage in the challenged conduct, *see Hersh,* 189 N.W.2d at 289; *Isely,* 880 F.Supp. at 1146. In addition, such claims are subject to the overarching principle that, under Michigan law, an employer cannot be held liable for intentional torts committed by an employee outside the scope of his employment. *See Bean v. Directions Unlimited, Inc.,* 462 Mich. 24, 609 N.W.2d 567, 571 (2000); *Hersh,* 189 N.W.2d at 288–89; *Nesbary,* 1992 WL 42350, at *2.

██ Finally, Plaintiff asserts that Defendant is liable under a nuisance theory. More specifically, Plaintiff alleges that Sergeant Johnson's repeated assaults of women on government premises constituted a "public nuisance," defined by the Michigan courts as "an unreasonable interference with a right common to the general public." *Wagner v. Regency Inn Corp.,* 186 Mich.App. 158, 463 N.W.2d 450, 453 (1990). As stated in *Wagner,* "[t]he possessor of land upon which [a] third person conducts an activity that causes a nuisance is subject to liability if: (1) he knows or has reason to know that the activity is being conducted and that it causes or involves an unreasonable risk of causing the nuisance, and (2) he consents to the activity or fails to exercise reasonable care to prevent the nuisance." *Wagner,* 463 N.W.2d at 454. With these principles of Michigan tort law in mind, the Court returns to the provisions of the FTCA.

### 3. The Supreme Court's Ruling in *Sheridan*

Subject to the law of the pertinent state, the FTCA imposes liability on the federal government "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). As noted, however, this liability does not extend to "[a]ny claim arising out of assault, battery," or several other enumerated intentional torts. 28 U.S.C. § 2680(h). Although they offer sharply different views of the case, the parties agree that the decision in *Sheridan v. United States,* 487 U.S. 392, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988), provides significant guidance as to the meaning and scope of the FTCA's intentional tort exclusion.

In *Sheridan,* an off-duty serviceman named Carr consumed large quantities of various alcoholic beverages, and later was found lying face down in a drunken stupor on the floor of the naval hospital where he served as a medical aide. As Carr was being led to the emergency room for assistance, he broke free. In the ensuing struggle to restrain him, his pursuers observed a rifle barrel protruding from the bag Carr was carrying. At the sight of this weapon, the pursuers ceased their attempts to subdue Carr, and they made no effort to alert the appropriate authorities that Carr was both armed and intoxicated. Upon escaping to a nearby public street, Carr fired several rifle shots into a passing automobile, striking and injuring one of the plaintiffs. The plaintiffs asserted negligence claims under the theory that the Government failed to prevent Carr's use of his rifle, but the lower courts held that these claims were foreclosed by the FTCA's intentional tort exclusion.

The Supreme Court reversed. As the starting point for its analysis, the Court assumed, as had the courts below, that the plaintiffs' allegations would support a negligence claim under the relevant Maryland "Good Samaritan" law, in light of the voluntary undertaking by fellow servicemen to "provide care to a person who was visibly drunk and visibly armed." *Sheridan*, 487 U.S. at 401, 108 S.Ct. at 2455. The Court then turned to the "arising out of" language of the FTCA's intentional tort exclusion, and held that this language does not reach claims that rest upon a theory of tort liability "entirely independent of" the intentional tortfeasor's status as a government employee. In so ruling, the Court adopted Judge (later Justice) Harlan's interpretation of the intentional tort exclusion in *Panella v. United States*, 216 F.2d 622 (2d Cir.1954):

> In that case ..., a prisoner claimed that an assault by another inmate had been caused by the negligence of federal employees. After recognizing that the "immunity against claims arising out of assault and battery can literally be read to apply to persons other than government employees," *id.* 216 F.2d, at 624, [Judge Harlan's] opinion concluded that § 2680(h) must be read against the rest of the Act. The exception should therefore be construed to apply only to claims that would otherwise be authorized by the basic waiver of sovereign immunity. Since an assault by a person who was not employed by the Government could not provide the basis for a claim under the FTCA, the exception could not apply to such an assault; rather, the exception only applies in cases arising out of assaults by federal employees.

> In describing the coverage of the FTCA, Judge Harlan emphasized the statutory language that was critical to his analysis. As he explained, the Act covers actions for personal injuries

"caused by the negligent or wrongful act or omission *of any employee of the Government* while acting within the scope of his office or employment ... (Italics supplied)." *Id.*, at 623. We need only move the emphasis to the next phrase—"while acting within the scope of his office or employment"—to apply his analysis to the assault and battery committed by the off-duty, inebriated enlisted man in this case. If nothing more was involved here than the conduct of Carr at the time he shot at petitioners, there would be no basis for imposing liability on the Government. The tortious conduct of an off-duty serviceman, not acting within the scope of his office or employment, does not in itself give rise to Government liability whether that conduct is intentional or merely negligent.

As alleged in this case, however, the negligence of other Government employees who allowed a foreseeable assault and battery to occur may furnish a basis for Government liability that is entirely independent of Carr's employment status .... [I]t seems perfectly clear that the mere fact that Carr happened to be an off-duty federal employee should not provide a basis for protecting the Government from liability that would attach if Carr had been an unemployed civilian patient or visitor in the hospital. Indeed, in a case in which the employment status of the assailant has nothing to do with the basis for imposing liability on the Government, it would seem perverse to exonerate the Government because of the happenstance that Carr was on a federal payroll.

In a case of this kind, the fact that Carr's behavior is characterized as an intentional assault rather than a negligent act is also quite irrelevant. If the Government has a duty to prevent a

foreseeably dangerous individual from wandering about unattended, it would be odd to assume that Congress intended a breach of that duty to give rise to liability when the dangerous human instrument was merely negligent but not when he or she was malicious .... Because neither Carr's employment status nor his state of mind has any bearing on the basis for petitioners' claim for money damages, the intentional tort exception to the FTCA is not applicable in this case.

*Sheridan,* 487 U.S. at 400–03, 108 S.Ct. at 2455–56 (footnotes omitted).

Finally, the Court reserved judgment on an issue presented here. In light of its determination that "Carr's employment status is irrelevant to the outcome," the Court stated that "it is not appropriate in this case to consider whether negligent hiring, negligent supervision, or negligent training may ever provide the basis for liability under the FTCA for a foreseeable assault or battery by a Government employee." 487 U.S. at 403 n. 8, 108 S.Ct. at 2456 n. 8. In a separate opinion concurring in the judgment, however, Justice Kennedy deemed this issue "unavoidable, both as an analytic matter and on the facts of this case." 487 U.S. at 405, 108 S.Ct. at 2457 (Kennedy, J., concurring in the judgment). Justice Kennedy further opined that negligent hiring and supervision claims should be barred by the intentional tort exception, reasoning that this exception otherwise would be greatly weakened "because it is likely that many, if not all, intentional torts of Government employees plausibly could be ascribed to the negligence of the tortfeasor's supervisors." 487 U.S. at 406–07, 108 S.Ct. at 2458 (Kennedy, J., concurring in the judgment).

**4. The Intentional Tort Exclusion as Applied to This Case.**

It remains only to apply the above-referenced Michigan and federal law and certain other relevant precedents to the allegations of this case. In challenging the basis for Defendant's motion, Plaintiff contends that *Sheridan* is directly on point here, and that it dictates the conclusion that her claims are not barred by the FTCA's intentional tort exclusion. The Court agrees to a point, but finds *Sheridan* distinguishable in one important respect that forecloses many, if not all, of Plaintiff's theories of recovery.

■ Turning first to Plaintiff's premises liability claim, the Court fully agrees with Plaintiff that this theory of recovery, like the negligence theory under consideration in *Sheridan,* does not depend upon Sergeant Johnson's status as a federal government employee. If Johnson's presence at the Lapeer recruiting office amounted to a "dangerous condition" of which Defendant was aware or should have known, then Defendant would have owed an affirmative duty to protect its invitees "from an unreasonable risk of harm caused by" this dangerous condition on its premises. *Williams v. Cunningham Drug Stores, Inc.,* 429 Mich. 495, 418 N.W.2d 381, 383 (1988).[3] Johnson's employment status, moreover, would be wholly irrelevant to the characterization of his presence as a "dangerous condition"—he would pose exactly the same danger to invitees, and Defendant would be equally chargeable with its alleged knowledge of this risk, regardless of whether Johnson was an employee or a third party.

Nonetheless, the state-law premise underlying *Sheridan*'s analysis is wholly ab-

**3.** The Court assumes, without deciding, that Plaintiff is properly characterized as an "invi-

tee" under Michigan law.

sent here, at least as to Plaintiff's claim of premises liability. In *Sheridan*, the Court first **assumed** that the plaintiffs could state a viable claim under Maryland law "if the naval hospital had been owned and operated by a private person," and then found that this basis for liability was "entirely independent of" the assailant's employment status. *Sheridan*, 487 U.S. at 401, 108 S.Ct. at 2455. Here, in contrast, while Plaintiff arguably has established the latter proposition, the former assumption runs directly afoul of the Michigan Supreme Court's ruling in *MacDonald*. Absent a viable state-law theory of recovery if Defendant were viewed as a private party, the ruling in *Sheridan* simply does not apply to this case.

This Court readily concludes that *MacDonald* forecloses Plaintiff's premises liability claim in this case. Much as Plaintiff might wish to characterize Sergeant Johnson as a "dangerous condition," he was instead an individual with an alleged propensity to assault women. Yet, such a propensity merely made it foreseeable that he might commit an assault at Defendant's Lapeer recruiting office. As *MacDonald* makes plain, the foreseeability of such a criminal act does not in any way alter the duty owed by a premises owner to its invitees under Michigan law.

Indeed, even if Sergeant Johnson or others had committed the very same or a similar offense on a number of prior occasions, Defendant's duty under Michigan's premises liability law would have remained precisely the same—namely, to "respond[ ] reasonably" to each such incident as it occurred, in a way that reasonably addressed the "risk of imminent and foreseeable harm to an identifiable invitee" that arose as a result of each specific episode of criminal activity. *MacDonald*, 628 N.W.2d at 39. No matter how foreseeable a criminal act might be, Michigan law imposes no duty upon a premises owner to use its knowledge to prevent such an act. Thus, while the Court agrees with Plaintiff that the scope of Defendant's duty was wholly independent of Sergeant Johnson's status as a federal government employee, the Court finds as a matter of law that this duty did not extend to preventing a criminal assault by Johnson (or anyone else) on Defendant's premises. Because Plaintiff is pursuing only this theory of prevention, and does not challenge the reasonableness of Defendant's response to Johnson's assault,[4] her premises liability claim is subject to dismissal.

This same reasoning defeats Plaintiff's appeal to nuisance law. As noted, one of the elements of a nuisance claim under Michigan law is that the landowner must "know[ ] or ha[ve] reason to know" that a third party is conducting an activity on his land that "involves an unreasonable risk of causing" a nuisance. *Wagner*, 463 N.W.2d at 454. If this standard were satisfied by a handful of prior incidents of criminal activity, a plaintiff could readily avoid the result in *MacDonald* by bringing her claim

---

4. At the October 30 hearing on Defendant's motion, Plaintiff's counsel suggested for the first time that there might be some question as to whether other employees might have been in the vicinity at the time of Johnson's assault, and yet failed to come to Plaintiff's aid. Plaintiff's First Amended Complaint includes no such allegations, however; indeed, it seemingly indicates just the opposite, alleging that when Plaintiff arrived at the Lapeer recruiting office on November 4, 2000, "there were no recruits, only Sergeant Johnson." (First Amended Complaint at ¶ 17.) Moreover, to the extent that Plaintiff's counsel suggested at the October 30 hearing that further discovery might lend support to an "unreasonable response" theory of recovery, the Court observes that the discovery period had long since closed by the time of this hearing. It would appear, therefore, that Plaintiff lacks any evidentiary basis for pursuing such a theory.

under nuisance rather than premises liability law.

As noted by Defendant, the Michigan courts have cautioned that "[t]oo often, 'nuisance' terminology is used to mask what are, in fact, simple negligence claims for the purpose of avoiding some effects of calling it what it is, a negligence claim." *Schroeder v. Canton Township,* 145 Mich. App. 439, 377 N.W.2d 822, 823 (1985). It would undermine the policy footing of *MacDonald* to hold that the foreseeability of criminal acts is irrelevant to a claim of premises liability, but not to a nuisance claim. In any event, Defendant points out that the case relied upon by Plaintiff, *Wagner,* is readily distinguishable, as it involved premises where "[s]tolen cars, shootings, and calls to the police were almost daily occurrences," where "[p]rostitutes maintained rooms in the hotel on a daily basis," where "[d]rug trafficking was a constant problem with Young Boys, Inc., a notorious drug trafficking gang, renting entire floors of the hotel from which to run their operations," and where "[a] fire bombing once 'took out' an entire floor of the hotel." *Wagner,* 463 N.W.2d at 454. Whether or not such rampant criminal activity might support a nuisance claim under Michigan law, the Court finds that the more limited allegations of criminal wrongdoing advanced here are controlled by the ruling in *MacDonald.*

■ This leaves only Plaintiff's theories of negligent hiring and supervision. Plaintiff faces a number of obstacles in pursuing this theory. First, she must walk a thin (and perhaps nonexistent) line in her pleadings. In order to appeal to the ruling in *Sheridan,* Plaintiff must demonstrate that it is irrelevant whether Sergeant Johnson was a federal employee or was acting in the scope of his employment when he committed his assault. Indeed, in an apparent effort to bring this case within the ambit of *Sheridan,* Plaintiff's amended complaint notably **omits** the initial complaint's allegation that Johnson had access to the Lapeer recruiting office by virtue of his employment as a Marine Corps recruiter. (*See* Complaint at ¶ 24.) Yet, as noted above, a claim of negligent hiring or supervision under Michigan law **requires** a showing that the improperly hired or supervised employee acted within the scope of his employment. Plaintiff, of course, may plead several theories of recovery in the alternative, but it would appear that the affirmative benefit of *Sheridan* cannot be carried over to Plaintiff's claims of negligent hiring and supervision. As to this claim, Plaintiff must find another way around the FTCA's intentional tort exclusion.[5]

On this legal side of this claim, moreover, Plaintiff must overcome the great weight of authority against her. In particular, all but one of the Courts of Appeals

5. As a purely factual matter, there was little or no indication at the October 30 hearing that Plaintiff could establish the requisite "scope of employment" element of a claim of negligent hiring or supervision. Though Plaintiff met Sergeant Johnson while he was engaged in recruiting activities at a local fair, this initial encounter led to a purely personal relationship that spanned over a year before Johnson's November 4, 2000 assault. Next, while Johnson had access to the Lapeer recruiting office by virtue of his employment, and he lured Plaintiff to this facility under the guise of watching him perform his recruiting activities, Plaintiff acknowledges in her complaint that this was an utter deception, and that no recruits were present when she arrived at the office. It is highly problematic, in this Court's view, to hold that the "scope of employment" requirement can be satisfied through an employee's false and deceitful declaration that he is acting under the authority of his employer. In light of the procedural posture of this case, however, the Court need not resolve this issue.

that have considered the issue, and many District Courts as well, have held that negligent hiring and supervision claims involving an employee's intentional tort are barred by the FTCA's intentional tort exclusion. *See, e.g., Billingsley v. United States,* 251 F.3d 696, 698 (8th Cir.2001); *Leleux v. United States,* 178 F.3d 750, 756–58 (5th Cir.1999); *Guccione v. United States,* 878 F.2d 32 (2d Cir.1989); *Borawski v. Henderson,* 265 F.Supp.2d 475, 484–86 (D.N.J.2003); *Ryan v. United States,* 156 F.Supp.2d 900, 902–07 (N.D.Ill.2001); *Lilly v. United States,* 141 F.Supp.2d 626, 629–30 (S.D.W.Va.2001), *aff'd,* 22 Fed. Appx. 293 (4th Cir.2001). These courts generally have reasoned that negligent hiring and supervision claims surely "arise out of" the employee's tortious conduct within the meaning of the intentional tort exclusion, *see, e.g., Leleux,* 178 F.3d at 756–58,[6] and that such claims patently fail to satisfy the *Sheridan* test of "entire[ ] independen[ce]" from the intentional tortfeasor's status as a federal government employee, *see, e.g., Guccione,* 878 F.2d at 32–33. The Ninth Circuit is the sole appellate court to conclude otherwise, reasoning that it would be "irrational" to hold the federal government liable for negligence when the intentional tortfeasor is not a government employee, but to deny liability in cases where the tortfeasor is an employee. *See Bennett v. United States,* 803 F.2d 1502, 1504 (9th Cir.1986).

This "irrational" distinction, however, is precisely the distinction between tort theories of liability that depend upon an employment relationship (*e.g.,* negligent hiring or supervision) and those that do not (*e.g.,* premises liability). The result deemed unacceptable by the Ninth Circuit arises solely by virtue of a plaintiff's election to pursue an employment-related theory of liability that runs directly afoul of the express language of the FTCA and its intentional tort exclusion. Where the federal government's negligence rests upon its failure to prevent an employee from committing an intentional tort, it is difficult to see how such a negligence claim does not "aris[e] out of" an intentional tort within the meaning of § 2680(h). Nor is such a claim aided by the ruling in *Sheridan,* because it cannot possibly be said to be "entirely independent of" the intentional tortfeasor's employment status. Consequently, under the facts and allegations of this case, the Court holds, in accord with the weight of authority, that Plaintiff's claims of negligent hiring and supervision are defeated by the FTCA's intentional tort exclusion.

## IV. CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's November 6, 2002 Motion to Dismiss, as supplemented by a renewed motion filed on February 18, 2003, is GRANTED.

### JUDGMENT OF DISMISSAL

The Court having this day entered an Opinion and Order granting Defendant's Motion to Dismiss,

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DE-

---

**6.** As noted in many of these decisions, a plurality of four Supreme Court justices reached this same conclusion in *United States v. Shearer,* 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985) (plurality opinion). In that case, the plurality opinion stated that the plaintiff could not "avoid the reach of § 2680(h) by framing her complaint in terms of negligent failure to prevent the assault and battery," because this provision "does not merely bar claims *for* assault and battery," but excludes "in sweeping language" any "claim *arising out of* assault and battery." 473 U.S. at 55, 105 S.Ct. at 3041 (plurality opinion).

CREED that this case be, and hereby is, dismissed in its entirety with prejudice.