# CASES DETERMINED

IN THE

# SUPREME COURT OF ARKANSAS

## WEIGEL v. McCLOSKEY.

## Opinion delivered April 27, 1914.

1. ACTIONS—MISJOINDER—PREJUDICE.—It is error to require plaintiff to elect to proceed upon one of two causes of action set out in his complaint, when; if the two actions had been brought separately, they could have been consolidated under Act No. 339, Acts 1905, p 798. (Page 6.)

2. DAMAGES—BASIS OF FINDING—EVIDENCE.—While it is better practice to tell the jury that their finding as to damages must be based on the evidence in the case, yet when it is plain from the charge of the court as a whole that the jury were told that their findings must be based on the evidence in the case, the jury could not be misled nor feel authorized to make a finding that was not based upon the evidence, because some separate or particular instruction omitted this precaution. (Page 6.)

3. PARDON—WHEN EFFECTIVE.—A pardon is effective upon delivery and acceptance. (Page 7.)

4. COUNTY CONVICTS—PARDON—DUTY TO RELEASE—SCOPE OF AUTHORITY OF WARDEN.—Where county convicts were leased by the county to defendant, and defendant placed them in charge of a warden, when a pardon for a certain prisoner is presented to the warden, it is within the scope of his authority to have examined the records and see if there were other commitments under which defendant was held, or to have discharged the defendant at once. (Page 7.)

5. PARDON—RIGHT OF PRISONER TO FREEDOM—FALSE IMPRISONMENT.—A prisoner who has been pardoned by the Governor is immediately entitled to his freedom, and when the same was denied a prisoner by the lessee of county convicts, the prisoner whose liberty is so restrained may maintain an action for false imprisonment against the said lessee. (Page 8.)

6. COUNTY CONVICTS—LEASED CONVICTS—MISTREATMENT.—A county convict who has been leased to appellant may recover damages from the latter for causing a "spur" to be fixed to his leg, and causing physical injury to the convict thereby. (Page 8.)

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks,* Judge; modified and affirmed.

### STATEMENT BY THE COURT.

C. E. McCloskey instituted this action against E. N. Weigel to recover damages for false imprisonment. His complaint also alleges that during the time of his imprisonment he was unlawfully and wrongfully forced to wear upon his leg an iron shackle, commonly known as a "spur," which was very painful, and caused a sore on his leg. The facts are as follows:

The plaintiff, McCloskey, was convicted before a justice of the peace in Pulaski County of two offenses, his fine being fixed in one case at the sum of one dollar, and in the other in the sum of fifty dollars. The defendant, Weigel, at the time had leased the county convicts from the county court, and was working them under his lease. Under the rules adopted by the county court for working county prisoners, the contractor had the right to put fetters, or shackles, upon any prisoner who improperly refused to work or attempted to escape. One of the rules provided that the contractor should use all reasonable means to prevent a convict from escaping. Another one provided that a contractor should appoint a warden and deputy warden, but that before said appointment became effective such appointment must be approved by the county court. After his conviction on the 10th day of June, 1908, the plaintiff was turned over to the defendant to work out his fine and costs. W. H. Rankin applied to the Governor for a pardon for the plaintiff, and the pardon was issued on the 24th day of June, 1908, and delivered to Rankin. Rankin carried the pardon out to the place where the plaintiff, with the other county prisoners, was worked by the defendant. The defendant was not present, and Rankin delivered the pardon to John Harden, who was the warden in charge of the convicts. Harden had been appointed by the defendant, and his appointment had been approved by the county court. The warden refused to turn the

plaintiff loose, saying that he had no authority to do so and that the pardon would have to be delivered to the defendant. Rankin testifies that he left the pardon with the warden and attempted to get in communication with the defendant over the telephone, but was unable to do so. On the other hand, the warden denied that Rankin left the pardon with him. The defendant lived about three miles from the camp where the convicts were worked and kept his books at his residence. He states that when he returned home that evening his wife delivered the pardon to him; that he immediately examined his books to see if there were any commitments against the plaintiff other than those named in the pardon, and that when he found there were not he immediately sent a messenger with the pardon to the camp with instructions to the warden to liberate the plaintiff. The pardon, according to the testimony of Rankin, was delivered to the warden at about 2 o'clock in the afternoon. The warden continued to work the plaintiff until about 4:30 o'clock, at which time the shackles were ordered to be cut off his leg, and this was done. The plaintiff, however, was detained in custody until 7 or 8 o'clock in the evening, this being the time that the warden received instructions from the defendant to liberate the plaintiff. The plaintiff testified that he made no effort whatever to escape while he was a prisoner in charge of the defendant, and that the iron spur was placed upon him the first day he was delivered into the custody of the defendant and remained there, both day and night, until he was liberated. He says that he suffered pain on account of the spur being on his leg, and that it caused a sore place to form there. The defendant testified that he was informed by the officers, before the plaintiff was delivered to him, that the plaintiff had a bad reputation and was likely to escape unless precautions were taken to prevent him; that in order to prevent his escape he placed the iron spur on his leg.

Other facts will be referred to in the opinion. The jury returned a verdict for the plaintiff for one thousand dollars for false imprisonment and a separate verdict for one hundred dollars for placing and keeping the iron spur on the plaintiff's leg. Judgment was rendered upon the verdict in each cause of action, and the defendant has appealed.

*James A. Comer,* for appellant.

1. The court's instruction on the measure of damages errs in directing the jury to assess the damages at such sum as "you *think,* in your *judgment,* will compensate him for the injuries he has sustained," thereby permitting them to assess the amount, not from the evidence adduced, but from their own judgment, independent of the facts proved. 87 Ark. 126.

2. Appellant could properly be held liable for detention of appellee only after he received the pardon. The time intervening between the reception of the pardon and appellee's release was less than one hour, and there is no proof of malice or oppression of appellee during that time. The verdict, it is patent, was excessive.

3. It is provided by rule 5, adopted by the county prison board, that "the contractor shall use all reasonable means to prevent a convict from escaping, and for the purpose of recapturing him." The facts in this case show that the placing of the iron spur on the leg of the plaintiff was a reasonable precaution adopted under the above rule to prevent his escape. 42 Minn. 129; 23 Fed. 987. The cause of action stated in the second count of the complaint can not be maintained against appellant alone, but should have been brought upon the bond of the contractor. Kirby's Dig., § § 1081, 1084.

The question whether the spur was wrongfully placed on appellee, was not a question of fact for the jury, but one of law for the determination of the court. 20 Ark. 590; 67 Ark. 533; 75 Ark. 58; 115 Mich. 50; 80 N. Y. Supp. 991.

*John F. Clifford,* for appellee.

1. On the first count, the only defense attempted was justification. Weigel was responsible, not on account of any evil motive or negligence. He held appellee, or ordered him to be held, at his peril. · Hale on Torts (1896 ed.), Hornbook Series, 244; 19 Cyc. 319; 33 Ark. 320. The evidence shows that appellee was held because there might have been other charges or warrants against him. If there were none, appellant, acting at his peril, was liable. 71 Ark. 241, and authorities cited; 2 Am. & Eng. Enc. of L., 884-889; 3 Cyc. 885-889; 19 Cyc. 319; Hale on Torts, 248. The imprisonment after the pardon being admitted, and appellants' attempted justification falling short of a real defense, a peremptory instruction was proper. The reasonableness of the detention was a question of law for the court. 12 Am. & Eng. Enc. of L. 748.

2. The answer raised no affirmative defense to the second count of the complaint.

The rule 5 of the prison board, relied on by appellant, must be considered in connection with the other rules adopted by that board. In view of the severe provisions of rule 3, somewhat modified by rule 4, a proper construction of the rules taken together appears to ˙be that actual punishment is contemplated when *deserved,* and that unruly prisoners shall be fettered or whipped only when they refuse to work or *attempt to escape.* Rule 5 is a general rule for the government and safety of the whole convict camp, and the giving of express authority in rule 3 to fetter and whip, and the use of only the words, "any reasonable means," to prevent escape, etc., in rule 5, indicates an intention to withhold from the contractor the right to use shackles under rule 5. Black on Interpretation of Laws, 146; 26 Am. & Eng. Enc. of L. 604; 20 Ark. 420.

Under the circumstances of the case, it was a question for the jury whether or not the shackling of appellee was reasonable. 44 Ark. 130.

3.  The objection to the court's instruction on the measure of damages was one of form, which should have been raised by specific objection.  70 Ark. 563; 93 Ark. 209; 65 Ark. 255; 98 Ark. 92.

HART, J., (after stating the facts).  Counsel for defendant made a motion to compel plaintiff to elect upon which cause of action he would proceed to trial, and assigns as error the action of the court in refusing to require plaintiff to make such election.  An act of the General Assembly of 1905 provides, in effect, that when causes of a like nature, or relative to the same question, are pending in any circuit court in this State, the court may consolidate said causes when it appears reasonable to do so.  Acts of 1905, page 798.  If separate actions had been brought, we think the court could have consolidated them under this statute.  Therefore, no prejudice could have resulted to the defendant by the court refusing to require plaintiff to elect upon which cause of action he would proceed.  See *Mahoney* v. *Roberts,* 86 Ark. 130; *Ashford* v. *Richardson,* 88 Ark. 124; *Western Union Tel. Co.* v. *Shofner,* 87 Ark. 303.

It is next contended by counsel for defendant that the court erred in giving instructions on the measure of damages.  He claims that the error consists in the court not telling the jury, in specific terms, that their finding as to the amount of damages must be based on the evidence, and insists that the instructions left it to the jury to find for the plaintiff in any amount that, in their judgment, should be proper.  We have condemned instructions similar to the one now under consideration in several cases.  See *St. Louis, I. M. & S. Ry. Co.* v. *Steed,* 105 Ark. 205; *St. Louis, I. M. & S. Ry. Co.* v. *Dallas,* 93 Ark. 209.  However, we have never held that such an instruction is reversible error.  In the case of *St. Louis, I. M. & S. Ry. Co.* v. *Hydrick,* 109 Ark. 231, 160 S. W. 196, the court said:

"While it is always better form, and the better practice, for the court to tell the jury that its findings on every issue of fact in the case must be based upon the

evidence, yet where it is plain from the charge of the court, taken as a whole, that the jury were told that their findings must be based upon the evidence, the jury could not be misled nor feel authorized to make a finding that was not based upon the evidence because some separate or particular instruction omitted this precaution. The jury were sworn, in the first instance, to try the case and a true verdict render according to the law and evidence. Kirby's Digest, § 4530. That being true, it is not likely that any man of sufficient intelligence to be a competent juror would feel authorized to wander beyond the evidence to find matters upon which to predicate his findings in the case. The conscientious juror would necessarily feel restrained by his oath to base his findings upon the evidence.''

It is also insisted by counsel for defendant that the verdict of the jury on the cause of action for false imprisonment is excessive; and in this contention we think he is correct. A pardon is effective upon delivery and acceptance. See *Redd* v. *State,* 65 Ark. 485; *Hunt,* Ex parte, 10 Ark. 284. The plaintiff was lawfully in the custody of the defendant as lessee of the county prisoners under a contract made by him with the county court. While this is true, when the time for which a convict has been sentenced has expired, or when he has been pardoned by the Governor, he is in law no longer a convict, and can not be held as such. The defendant himself did not remain with the convicts and have direct charge of them. He delegated that authority to a warden who was appointed by him with the approval of the county court. It was the duty of Rankin, who procured the pardon for the plaintiff, to deliver the pardon first to the warden in order that he might examine it and see that it was issued by the Governor and ascertain that it was what it purported to be. It was then the duty of the warden to cease working the plaintiff. It is insisted by counsel for defendant that he should have had a reasonable time to have examined his records in order to ascertain whether or not the plaintiff had been pardoned

for all offenses for which commitments had been delivered to him. This is true; but the warden refused to release the plaintiff solely on the ground that he did not have authority to do so. He told the person who had the pardon that the defendant alone reserved the right to discharge the plaintiff. The defendant having delegated to the warden the authority to have charge of the persons worked by him, it was within the scope of the authority of the warden to have examined the records himself and have determined whether there were other commitments under which the plaintiff might be held. It was his duty to have made such an examination, or caused it to have been made at once, or to have discharged the prisoner. A prisoner who has been pardoned by the Governor is entitled to his freedom, and to deprive him of it is unlawful. Therefore, the plaintiff was entitled to a judgment for some amount. As above stated, he was in legal custody of the defendant, and he had suffered all the humiliation it was possible for him to suffer solely on account of being a prisoner. The undisputed evidence shows that the illegal detention of the plaintiff by the defendant was not wilful. No indignities were offered to the plaintiff by the defendant, or his servants, after the pardon had been presented to the warden. It is true he was required to work for about two hours and a half thereafter; but this was done under a misapprehension of the law on the part of the warden who had the legal custody of the plaintiff. Under these circumstances, we think that a judgment for $25 would have been sufficient compensation for the jury to have awarded, and a judgment for that amount will be affirmed.

We find no error in the record on the cause of action for compelling the plaintiff to wear a spur, and the judgment on that count will be affirmed.