THOMAS REILLY, TRUSTEE *v.* TIMOTHY C. DALE, COMMISSIONER OF PUBLIC WELFARE, ET AL.

October Term, 1942.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed November 4, 1942.

*Alban J. Parker,* Attorney General, for the petitionees.

*Lee E. Emerson* and *E. J. Smith* for the petitioner.

MOULTON, C. J.   This is a petition for contempt brought to the Orleans County Court alleging the following: George Urie was confined in Orleans County jail for contempt in refusing to comply with an order of the County Court requiring him to pay a sum of money for the benefit of Hazel Urie, his divorced wife, and his minor children, to Thomas Reilly as trustee, petitioner herein.   While so confined, Urie broke out of jail but was retaken and was later convicted of the crime of escaping from a penal institution, and sentenced to serve a term of not less than two years and six months or more than four years in the House of Correction, the mittimus providing that at the conclusion of the sentence he was to be recommitted "to the County jail of Orleans County, to continue in said jail."   This petition alleges that the respondents, Timothy C. Dale, Commissioner of Public Welfare of the State of Vermont, and Lawrence McGovern, Keeper of the House of Correction, have knowingly and wilfully and without lawful excuse or authority permitted Urie to leave the House of Correction and to go at large, and have wilfully refused and neglected to return him to the House of Correction so that he might be recommitted to the Orleans County Jail, and have wilfully refused so to recommit him, in contempt of the order of the Orleans County Court, which is still in full force and effect.

The respondents' answer alleges that the Hon. George D. Aiken, then Governor of this State, granted a conditional pardon to George Urie for the crime of an escape; that Urie was released from the House of Correction by virtue of the order of the Governor, based upon his constitutional and statutory authority; that the release was mandatory upon the respondents, who acted as instruments of the Executive in carrying out the terms of the conditional pardon.   It is denied that the terms of the mittimus conferred upon them any authority to hold Urie in custody after his

pardon became effective or to recommit him to the Orleans County Jail.

This answer was met by a demurrer, which was sustained *pro forma* by the trial court. The respondents excepted and the cause was passed to this Court before final judgment, under the provisions of P. L. 2072.

The petitioner's argument runs in this way: The Commissioner of Public Welfare, who is, by virtue of P. L. 471, amended by No. 59 Acts 1941, the state probation officer, has supervision over prisoners who have been paroled by the governor, under P. L. 8866. He has also the powers of a police officer, as provided by P. L. 8875, and the Superintendent of the House of Correction is subject to his control, under P. L. 5509. From these statutes it is claimed that the Commissioner and Superintendent were officers of the Orleans County Court, and as such under the duty of holding George Urie in temporary custody after the receipt of his conditional pardon; or, after his release, returning him to custody for the purpose of recommitment to the Orleans County Jail; or recommiting him themselves.

This argument is not sound. The respondents are not officers of the County Court. The Commissioner of Public Welfare is the head of a State department, appointed by the Governor, by and with the advice of the Senate. P. L. 455. The Warden of the State Prison, who is *ex officio* Superintendent of the House of Correction, is appointed by the Commissioner of Public Welfare by and with the consent of the Governor. P. L. 5507.

The granting of the conditional pardon was within the constitutional prerogative of the Governor, and the Commissioner of Public Welfare had no authority with regard to it. *In re De Palo,* 101 Vt 510, 512, 144 A 678. His duty, before the issuance of the pardon, was only to investigate and report upon the convict's application when requested by the Governor to do so. P. L. 8866. No such request is claimed to have been made in this instance. The pardon became effective when it was accepted by George Urie, who then became entitled to his release from the House of Correction. *In re Paquette,* 112 Vt 441, 27 A2d 129, 131. It would have been unlawful thereafter to deprive him of his liberty by a further detention therein. *Weigel* v. *McCluskey,* 113 Ark 1, 166 SW 944, 946, Ann Cas 1916C 503. The conditional pardon is not set out in the answer but we assume it to be in the

4

usual form and clear and unequivocal in its provisions. It was the duty of the Superintendent to comply with it and release the prisoner. The control over the Superintendent given to the Commissioner by P. L. 5509 did not authorize the latter to direct the former to disregard the order of the Governor.

After the release, the Superintendent had no power to return George Urie to the House of Correction, or to recommit him to the Orleans County Jail. Neither had the Commissioner of Public Welfare, whose supervision over Urie gave him no authority of recommitment. The pardon could be revoked and the convict re-arrested only on a warrant issued by the Governor for a breach of the conditions imposed by the pardon. P. L. 8888. *In re Paquette,* 112 Vt 441, 27 A2d 129, 131. The powers of a police officer conferred upon the Commissioner of Public Welfare by P. L. 8875 have reference to persons placed on probation and committed to his care and custody by the courts, and do not apply to conditionally pardoned convicts, who are in a different position than probationers, [*In re De Palo,* 101 Vt 510, 511, 144 A 678] and are, as we have seen, under the direct control of the Governor.

It is claimed in the petitioner's brief that it was the duty of the respondents to inform the Governor of the contents of the mittimus, before the conditional pardon was granted or to notify the Orleans County Court of the issuance of the pardon. As to this, it suffices to say that these omissions are not alleged in the petition and for this reason are not in issue.

On the record presented, the respondents cannot be held in contempt. *The pro forma ruling sustaining the demurrer to the answer is reversed, and the petition is dismissed.*