Lloyd KINEGAK, Appellant,

v.

STATE of Alaska, DEPARTMENT OF CORRECTIONS, Appellee.

No. S–11315.

Supreme Court of Alaska.

Feb. 17, 2006.

Jim J. Valcarce, Christopher R. Cooke, Cooke, Roosa & Valcarce, Bethel, for Appellant.

Dale W. House, Assistant Attorney General, Anchorage, James L. Baldwin, Assistant Attorney General, Juneau, Gregg D. Renkes, Attorney General, Juneau, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

MATTHEWS, Justice.

## I. INTRODUCTION

Because of an oversight the Department of Corrections did not realize that Lloyd Kinegak's prison sentences were to run concurrently, and imprisoned him for seven days after his sentences ended. After being released, Kinegak sued DOC for damages. DOC claimed sovereign immunity under AS 09.50.250(3), which immunizes the state against claims arising out of false imprisonment. Kinegak argued that DOC was not immune because it breached a duty to calcu-

late his sentence with due care, a duty he said existed independently of the false imprisonment tort. Converting DOC's motion to dismiss into a motion for summary judgment, the superior court rejected Kinegak's argument as "semantics" and entered judgment for DOC. We affirm.

## II. FACTS AND PROCEEDINGS

The facts are mostly undisputed. Kinegak pled no contest to misdemeanor charges and was sentenced to two concurrent sentences of sixty days, with twenty days off for good behavior and additional credit for time served. With the credits, Kinegak should have been released on July 3, 2002. But Kinegak was not released on that day. On July 9 Kinegak sent a letter to his probation officer pointing out the error, and he was released the next day. He served a total of seven extra days.

Ten months later, Kinegak filed a civil suit against DOC. The complaint alleged that "staff members employed by the State of Alaska, Department of Correction[s], at the Yukon Kuskokwim Correctional Center negligently failed to correctly compute plaintiff's release date[,] resulting in the negligent and unjustified continued incarceration of Lloyd Kinegak" for seven days. This complaint further alleged "greater than $50,000" in economic and non-economic injuries based on Kinegak's loss of liberty. According to the complaint, this injury was

> caused by the negligence of the defendant, including ... failing to correctly compute Lloyd Kinegak's minimum release date[;] failure to maintain accurate records; failing to maintain time accountings; ... failing to provide proper oversight and supervision of staff[;] and failing to use due care and caution in the incarceration of inmates.

DOC answered and admitted most of the allegations. According to the amended answer, "due to irregularities in the judgment DOC employees overlooked that plaintiff's sentences were to run concurrently, and as a result plaintiff was not released on his proper release date." The answer also pleaded af-

firmative defenses based on AS 09.50.250, the sovereign immunity statute.

DOC then moved to dismiss under Alaska Civil Rule 12(b)(6). Kinegak opposed the motion and cross-moved for partial summary judgment as to liability and for a finding of no immunity. The superior court treated DOC's motion as a motion for summary judgment, granted the motion, and entered judgment for DOC. Specifically, the superior court held that while DOC owed Kinegak a duty of care, DOC had sovereign immunity under AS 09.50.250. Kinegak had argued that his claim had an independent basis in negligence, and that therefore it did not "arise from the intentional tort of false imprisonment" within the meaning of the statute. Superior Court Judge Dale O. Curda rejected this, holding that

> [i]t is semantics to argue that one suffers from clerical negligence when that negligent act occurs in the true injury's causal chain. Kinegak's damages do not spring from DOC's lack of quality clerks, it springs from his physical incarceration at YKCC on dates that he was not legally allowed to be in custody. His claim, therefore, is one for false imprisonment.

## III. DISCUSSION

Because this is an appeal of a grant of summary judgment, our review is de novo.[1] We usually consider whether there is a tort duty before deciding sovereign immunity questions, but this is not always our practice.[2] In this case resolving the duty issue is unnecessary because we conclude that DOC is immune under AS 09.50.250(3).

Alaska Statute 09.50.250 waives the state's immunity against certain lawsuits but contains an explicit exception for suits arising out of false imprisonment: "an action may not be brought if the claim ... (3) arises out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights[.]" The parties appear to agree that as an agent of the state, DOC is entitled to whatever immu-

---

**1.** *Matanuska Elec. Ass'n, Inc. v. Chugach Elec. Ass'n, Inc.,* 99 P.3d 553, 558 (Alaska 2004).

**2.** *Kiokun v. State, Dep't of Pub. Safety,* 74 P.3d 209, 213 (Alaska 2003).

nities the state has.[3] The question presented is whether Kinegak's negligence claim "arises out of ... false imprisonment" within the meaning of AS 09.50.250(3). In answering this question, we will construe the state's immunity narrowly, because "liability is the rule, immunity the exception" in claims against the state.[4]

Kinegak's main argument is that his complaint should be reinstated under *Zerbe v. State*.[5] Zerbe's criminal case had been dismissed, but state employees allegedly failed to inform the judge of the dismissal, and the judge issued a bench warrant for Zerbe's arrest.[6] After Zerbe was arrested and jailed for nine hours without being allowed to make phone calls, he filed a complaint against the state that was "couched in terms of negligence." [7] The state claimed it was immune, arguing that Zerbe's claims arose out of false imprisonment and false arrest within the meaning of AS 09.50.250(3). The court rejected this argument and reinstated Zerbe's complaint. Citing federal authorities construing analogous language in the Federal Tort Claims Act, the court held that "it was negligent record keeping, rather than false imprisonment, which caused Zerbe's injuries." [8] The decision concluded with a broad statement about the state's liability for false arrests or false imprisonments caused by bureaucratic carelessness:

Today, when various branches of government collect and keep copious records concerning numerous aspects of the lives of ordinary citizens, we are unwilling to deny recourse to those hapless people whose lives are disrupted because of careless record keeping or poorly programmed computers. We see no justification for immunizing the government from the damaging consequences of its clerical employees' failure to exercise due care.[9]

Relying on this passage, Kinegak argues that his imprisonment was also caused by negligent or careless record keeping, and that his claim should therefore be reinstated just as Zerbe's was. DOC appears to concede that the complaint should be reinstated if *Zerbe* is good law, but argues that *Zerbe* has either been overruled by *Stephens v. State, Department of Revenue*,[10] and *Waskey v. Municipality of Anchorage*,[11] or that it ought to be overruled now in light of post-*Zerbe* decisions by the United States Supreme Court.

■ Although we do not agree with DOC that *Waskey* and *Stephens* have overruled *Zerbe*,[12] we do agree that we should overrule *Zerbe* now based on the federal case law. A prior decision should be overruled only if the court is clearly convinced that the precedent is erroneous or no longer sound because of changed conditions, and that more good than harm would result from overturning the

---

3. *See Guerrero v. Alaska Hous. Fin. Corp.*, 6 P.3d 250, 258–59 (Alaska 2000).

4. *Native Vill. of Eklutna v. Alaska R.R. Corp.*, 87 P.3d 41, 49 (Alaska 2004). *See also* 3 RICHARD J. PIERCE, JR., ADMINISTRATIVE LAW TREATISE § 19.4, at 1454 (4th ed.2002) (urging courts to narrow the scope of sovereign immunity for "intentional" torts); *United States v. Horn*, 29 F.3d 754, 762 n. 7 (1st Cir.1994) ("[T]he scholarly community has been overwhelmingly hostile to the [immunity] doctrine.").

5. 578 P.2d 597 (Alaska 1978).

6. *Id.* at 598.

7. *Id.*

8. *Id.* at 601.

9. *Id.* (footnote omitted).

10. 746 P.2d 908 (Alaska 1987).

11. 909 P.2d 342 (Alaska 1996).

12. Although *Stephens* and *Waskey* declared *Zerbe* overruled "to the extent" that it was in conflict with those decisions, both cases held only that the state does not have a common-law duty to use due care in initiating civil or criminal proceedings. *Stephens*, 746 P.2d at 912 n. 5 ("We believe that, in general, the state does not owe its citizens a duty of care to proceed without error when it brings legal action against them. To the extent that this contradicts our decision in *Zerbe* ..., that case is overruled."); *Waskey*, 909 P.2d at 344 (finding above passage from *Stephens* to be "applicable to this case"). Neither *Waskey* nor *Stephens* construes the immunity statute at issue in *Zerbe* and in this case, and neither case purports to speak to a situation where a prisoner is held beyond his term of confinement. We therefore think it fair to read neither *Waskey* nor *Stephens* as overruling *Zerbe*, at least as *Zerbe* might apply here.

case.[13] We believe this standard is met here, based primarily on changes in the federal cases in the years since *Zerbe* was decided.

■ The Federal Tort Claims Act has language that is nearly identical to the language in AS 09.50.250(3), and federal decisions construing the FTCA are persuasive authority in construing the Alaska statute.[14] When *Zerbe* was decided, it relied on a federal court of appeals decision, *Quinones v. United States*, construing the federal government's immunity for claims arising out of libel and slander.[15] Quinones was a former federal employee who alleged that he was injured when the government provided false information about Quinones to a potential employer.[16] Quinones sued the government for negligent record keeping, a tort in Pennsylvania, and the Third Circuit said the federal government's libel/slander immunity did not cover the claim because the elements required to make out a negligent record-keeping claim were different from the elements for libel or slander.[17] *Zerbe* said it would "adopt the reasoning of the Third Circuit in the *Quinones* case, and hold that it was negligent record keeping, rather than false imprisonment, which caused Zerbe's injuries."[18] On this basis, the court in *Zerbe* rejected the state's immunity defense.

Since *Zerbe* and *Quinones*, federal law has changed considerably. The most recent relevant decision by the United States Supreme Court is *Sheridan v. United States*.[19] In *Sheridan* "an obviously intoxicated off-duty serviceman" fired a gun into a car passing by him.[20] The plaintiff claimed that the federal government breached its good Samaritan duty to control the serviceman, because several government employees saw him wandering around with a loaded weapon and did not alert the authorities.[21] In response, the government sought to dismiss the suit based on the immunity for claims arising out of assault or battery. The Court rejected this argument, on the grounds that (1) the FTCA as a whole (including the intentional torts immunity) applied only if the injury was caused by acts committed within the scope of government employment, and the off-duty serviceman was acting outside that scope,[22] and (2) the basis of liability was the other government employees' breach of their "independent" good Samaritan duties.[23] On the latter point, the Court said that Congress, by immunizing the government from assault and battery, could not have intended to make recovery for good Samaritan breaches depend on whether the breach involved a failure to protect the plaintiff from another person who happened to be a federal employee, and who happened to act intentionally instead of negligently.[24]

■ The majority's rationale in *Sheridan* does not apply to this case. Here the person responsible for the release of Kinegak is the supervisor of the correctional center where he was held. The supervisor thus is the person who committed the tort of false imprisonment by failing to timely release Kine-

---

**13.** *State v. Fremgen*, 914 P.2d 1244, 1245–46 (Alaska 1996).

**14.** *See P.G. v. State, Dep't of Health & Human Servs., Div. of Family & Youth Servs.*, 4 P.3d 326, 335 (Alaska 2000). The exceptions to the FTCA are at 28 U.S.C. § 2680. Subsection (h) provides that the federal government's waiver of immunity shall not apply to: "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights[.]"

**15.** *Quinones v. United States*, 492 F.2d 1269 (3d Cir.1974); *see also Zerbe*, 578 P.2d at 600–01 (citing *Quinones* ).

**16.** *Quinones*, 492 F.2d at 1272.

**17.** *Id.* at 1280–81.

**18.** *Zerbe*, 578 P.2d at 601.

**19.** 487 U.S. 392, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988).

**20.** *Id.* at 393, 108 S.Ct. 2449.

**21.** *Id.* at 394, 108 S.Ct. 2449.

**22.** *Id.* at 400–01, 108 S.Ct. 2449 (relying on 28 U.S.C. § 1346(b), which is incorporated by reference in 28 U.S.C. § 2680(h)). Although AS 09.50.250 is mostly identical to the FTCA, the "scope of employment" language in subsection 1346(b) is absent from AS 09.50.250.

**23.** *Id.* at 401–02, 108 S.Ct. 2449.

**24.** *Id.* at 402, 108 S.Ct. 2449.

gak.[25] In committing this tort the supervisor was acting within the course and scope of his or her state employment and thus was in a different position from the off-duty serviceman in *Sheridan.* But Justice Kennedy wrote a concurrence in *Sheridan* that addresses cases in which the individual might be a government employee acting within the scope of his or her employment.

Justice Kennedy accepted the majority's argument that injuries "can arise from multiple causes," and that by immunizing the government from intentional torts, Congress did not intend to immunize the government from claims based on breaches of other common-law duties (such as duties to protect others from dangerous persons), even in cases where the immediate cause of injury was a federal employee committing one of the torts for which immunity was specifically retained in the FTCA (such as assault or battery).[26] But Justice Kennedy did not focus on whether the tortfeasor was acting within the scope of his or her employment, and he imposed one additional requirement on the plaintiff that the majority had declined to address. He concluded that the duty underlying the

cause of action should be a "separate duty *independent from the employment relation*"—and not, for example, a claim of negligent supervision of the employee.[27] Without this additional requirement, "litigants could avoid the substance of the exception because it is likely that many, if not all, intentional torts of Government employees plausibly could be ascribed to the negligence of the tortfeasor's supervisor. To allow such claims would frustrate the purposes of the exception."[28] In this way, Justice Kennedy's concurrence establishes two prerequisites to recovery: the plaintiff must identify a government duty that is distinct from the intentional tort, but that is also independent of the intentional actor's employment relationship with the government.[29]

Since *Sheridan,* Justice Kennedy's concurrence has carried the day in most federal courts. Most federal circuit courts that have addressed the question have said that the government is liable for harm caused by intentional torts, provided the government breached some "independent duty" that has a basis other than negligent supervision, training, or hiring of government employees.[30]

**25.** The defendant in a false imprisonment case must know that the plaintiff is imprisoned but need not know that the imprisonment is wrongful. *See* authorities discussed *infra* page 893.

**26.** *Id.* at 406, 108 S.Ct. 2449.

**27.** *Id.* The majority had said: "Because [the serviceman's] employment status is irrelevant to the outcome, it is not appropriate in this case to consider whether negligent hiring, negligent supervision, or negligent training may ever provide the basis for liability under the FTCA for a foreseeable assault or battery by a Government employee." *Id.* at 403 n. 8, 108 S.Ct. 2449.

**28.** *Id.* at 407, 108 S.Ct. 2449 (emphasis added).

**29.** Justice Kennedy stressed the latter by expressing it several times in slightly different ways: "[A] court must ascertain whether the alleged negligence was ... the breach of some separate duty independent from the employment relation." *Id.* at 406, 108 S.Ct. 2449. "On this theory [the good Samaritan duty], the Government's negligence is independent of its employment relationship with [the off-duty serviceman]." *Id.* at 407, 108 S.Ct. 2449. "This theory of liability does not depend on the employment status of the intentional tortfeasor." *Id.* at 407, 108 S.Ct. 2449.

**30.** For example, in *Bembenista v. United States,* 866 F.2d 493 (D.C.Cir.1989), the plaintiff was assaulted by a medical technician while a patient in a government medical center, and the court held that the government was not immune. This was because the government's "duty of protective care arose out of its special relationship with [plaintiff]"; the court went on to note that "[t]his theory of liability does not depend on the employment status of the intentional tortfeasor." *Id.* at 498 (quoting *Sheridan,* 487 U.S. at 407, 108 S.Ct. 2449 (Kennedy, J., concurring)). Most federal courts have specifically agreed with Justice Kennedy that negligent hiring and supervision claims should be rejected. *See Guccione v. United States,* 847 F.2d 1031, 1037 (2 Cir.1988) (duty must be "independent of the government's supervision of its employees"), *reh'g denied,* 878 F.2d 32 (2 Cir.1989); *Leleux v. United States,* 178 F.3d 750, 757 (5th Cir.1999) (similar); *Billingsley v. United States,* 251 F.3d 696, 698 (8th Cir.2001) (similar); *Borawski v. Henderson,* 265 F.Supp.2d 475, 486 (D.N.J.2003) (similar). *Cf. Franklin v. United States,* 992 F.2d 1492, 1499 n. 6 (10th Cir.1993) ("doubtful" whether negligent supervision or training claim would fall outside the intentional torts immunity, citing *Guccione*); *LM ex rel. KM v. United States,* 344 F.3d 695, 700 (7th Cir.2003) (rejecting negligent supervision and hiring claims, where district court in another case had already determined that negligent

These federal cases persuade us of two things. First, Kinegak's claim that DOC negligently supervised the employees who calculated his prison term (a claim not founded on anything in *Zerbe*) is contrary to the weight of federal authority. We agree with Justice Kennedy and the other federal judges who have concluded that allowing negligent supervision claims to go forward would be contrary to the legislature's intent in immunizing the government from certain torts. Government almost inevitably acts through employees supervised or hired by others, which means that negligent supervision (or negligent hiring or negligent training) could be alleged in most cases where a state employee commits one of the torts listed in AS 09.50.250(3). This would eliminate much conduct that fairly falls within the scope of the statutory immunity, and so we are persuaded that the superior court properly dismissed Kinegak's negligent supervision claim.

Second, the current state of federal law helps "clearly convince[ ]" us (within the meaning of the standard for overruling precedents) that *Zerbe* was wrongly decided and ought to be overruled.[31] In *Sheridan* both the majority and Justice Kennedy concluded that Congress, in immunizing the government from assault claims, did not intend to immunize claims based on a "different duty,"[32] such as the good Samaritan duty to prevent others from coming to harm—even in cases where the immediate cause of harm happened to be an assault by a federal employee. Justice Kennedy referred to "multiple causes" for the same tort, and the majority said "it would seem perverse to exonerate the Government because of the happenstance that [the serviceman] was on a federal payroll."[33]

But here it is hardly "happenstance" that the *Zerbe*-based tort pleaded by Kinegak also involved a false imprisonment. The conduct involved in record keeping by DOC clerks is an integral part of the state's imprisonment function. The *Zerbe* theory of liability under the facts and circumstances of this case is dependent on the employment status of the person responsible for the false imprisonment, given the prison superintendent's necessary reliance on accurate records and accurate record interpretation. Moreover, the facts alleged by Kinegak constitute false imprisonment, and would have constituted false imprisonment when the FTCA and AS 09.50.250 were enacted. The original version of the Restatement of Torts, the version available when the FTCA and AS 09.50.250 were enacted, requires the plaintiff to establish that the defendant knew that the victim was imprisoned, without regard to whether the defendant's act was knowing, reckless, negligent, or ignorant.[34] The Restatement (Second), published only a few years after AS 09.50.250 was enacted, does not materially change the basic elements of the tort,[35] but it does add language explicitly stating that failure to release a prisoner on time is false

---

supervision claim against the government based on same actor's conduct was barred by intentional torts immunity) (citing *Ryan v. United States*, 156 F.Supp.2d 900 (N.D.Ill.2001)). The one federal court that has embraced negligent supervision claims, notwithstanding Justice Kennedy's *Sheridan* concurrence, is the Ninth Circuit, which has upheld claims of negligent supervision of intentional actors and rejected Justice Kennedy's position. *See Bennett v. United States*, 803 F.2d 1502 (9th Cir.1986); *Senger v. United States*, 103 F.3d 1437 (9th Cir.1996).

**31.** We also believe that the "more good than harm" element of our test for overruling a prior decision is satisfied. Adopting Justice Kennedy's *Sheridan* rationale provides a method for distinguishing between cases that plausibly "arise out" of immunized torts. Some such cases should be given immunity, but others should not. Justice Kennedy's *Sheridan* rationale can be employed to

distinguish these two categories in a logical way that is consistent with the language of the statute whereas *Zerbe* contained no such method. If *Zerbe* were not overruled it would continue to cause outcomes that are contrary to the legislative requirement that certain categories of torts may not be maintained against the state.

**32.** *Sheridan*, 487 U.S. at 406, 108 S.Ct. 2449 (Kennedy, J., concurring).

**33.** *Id.; id.* at 402, 108 S.Ct. 2449 (opinion of the Court).

**34.** Restatement of Torts § 35 (1934).

**35.** Restatement (Second) of Torts § 35 (1965); *see also Zok v. State*, 903 P.2d 574, 577 n. 4 (Alaska 1995) (following definition of false imprisonment in Restatement (Second) of Torts).

imprisonment.[36] In addition, numerous cases establish that failure to release a prisoner was false imprisonment long before the FTCA and AS 09.50.250 were enacted.[37]

And once it is established that DOC's negligent record keeping amounts to a reasonably well-known predicate for false imprisonment, Kinegak's claim fails. Kinegak's claim is quite unlike the claim in *Sheridan*, where the wrong underlying the claim—that the government failed to control an armed, intoxicated person—was practically and morally different from the wrong contemplated by the immunity for assault and battery. (That the two wrongs were united in a particular case was the result of the "happenstance" that the dangerous person was a federal employee who ended up committing an enumerated tort.[38])

Our understanding of AS 09.50.250(3) is supported by the text of the statute, which applies to a "claim" that *"arises out of ... false imprisonment"* as opposed to a claim "of" false imprisonment. By using this language, we believe that the legislature that enacted AS 09.50.250(3) (and the Congress that enacted the FTCA) meant to immunize the government from claims arising out of the conduct constituting reasonably well-recognized forms of false imprisonment. We also find support in the only federal cases we know of concerning failures to release an inmate on time. In these cases, claims of negligence were rejected as "essentially" identical to a claim for false imprisonment.[39] Finally, common sense supports our reading:

retaining state immunity would be useless if plaintiffs could use a different theory to attack conduct that would be traditionally understood as false imprisonment and nothing more. Just as most federal courts have characterized "negligent supervision" claims as attempts to "avoid the substance" of the immunity provisions,[40] we think Kinegak's negligent record-keeping claim would avoid the substance and frustrate the purposes of the false imprisonment immunity.

> The one clear thing about this list of [intentional tort] exceptions is that the plaintiff's characterization of his action as one for negligence will not control and that the courts will ignore this label and treat the claim as one within the list of exceptions if the pleaded facts seem to warrant.[41]

This decision should not be read as an endorsement of DOC's conduct, which the superior court described as "abhorrent," and which would be even more abhorrent in a case involving a more significant miscalculation of a prisoner's sentence. It should also not be read as making the state immune in all cases where its tortious acts could have been pleaded as one of the torts enumerated in AS 09.50.250(3). There may be cases where the state's negligence constitutes a truly distinct wrong, even though the victim was injured because of an act constituting an enumerated tort.[42] We hold only that the state has shown that there is no wrong claimed in this case that is materially distinct from false imprisonment, and that Kinegak's claim was therefore properly dismissed.

36. *Id.* § 45; *see also id.* § 45 cmt. a, illus. 1 ("A is confined in jail under a sentence for a term. At the end of the term B, the jailor, is under a legal duty to release A, but refuses to do so. B is subject to liability to A.").

37. *See, e.g., Bath v. Metcalf,* 145 Mass. 274, 14 N.E. 133, 136–37 (1887) (Holmes, J.); *Weigel v. McCloskey,* 113 Ark. 1, 166 S.W. 944, 946 (1914); *Housman v. Byrne,* 9 Wash.2d 560, 115 P.2d 673 (1941).

38. *Sheridan,* 487 U.S. at 402, 108 S.Ct. 2449.

39. *Maurello v. United States,* 111 F.Supp.2d 475, 476 (D.N.J.2000) ("Maurello's claims ... are essentially a claim for false imprisonment"); *Puccini v. United States,* 978 F.Supp. 760, 761 (N.D.Ill.1997) ("plaintiff's claim is essentially one for false imprisonment").

40. *Sheridan,* 487 U.S. at 407, 108 S.Ct. 2449 (Kennedy, J., concurring).

41. Prosser & Keeton on the Law of Torts § 131, at 1039 (5th ed.1984) (footnote omitted).

42. *Cf. Sheridan, supra* (federal government was not immune where government employee injured plaintiffs by shooting into their car; notwithstanding its immunity for assault and battery, government was liable for its breach of its independent good Samaritan duty to disarm the employee); *Lane v. United States,* 225 F.Supp. 850, 852–53 (E.D.Va.1964) (federal government was not immune where government surgeon operated on wrong knee, even though "technical[ly]" this was a battery).

## IV. CONCLUSION

The judgment of the superior court is AFFIRMED.

FABE, Justice, with whom CARPENETI, Justice, joins, dissenting.

I respectfully dissent because I do not believe that the court's decision to overturn *Zerbe v. State*[1] complies with our rule of stare decisis. Under this well-settled rule, we must adhere to our precedents unless clearly convinced (1) that a decision was originally erroneous or is no longer sound, and (2) that more good than harm would result from overruling it.[2] Neither federal case law nor the legislative history of AS 09.50.250 indicates that *Zerbe* is no longer sound. Furthermore, overruling this decision is likely to result in significantly more harm than good, because doing so removes an incentive for prison officials to avoid negligence in their most basic duties, and invites precisely the type of negligence that led to Kinegak's unjust imprisonment. Because I would adhere to our rule of stare decisis, and hold that AS 09.50.250(3) does not immunize the state from Kinegak's claim, I would reverse the judgment of the superior court.

1. 578 P.2d 597 (Alaska 1978).

2. *State v. Fremgen*, 914 P.2d 1244, 1245 (Alaska 1996). In general, this court "do[es] not lightly overrule [its] past decisions." *State v. Dunlop*, 721 P.2d 604, 610 (Alaska 1986); *see also Thomas v. Anchorage Equal Rights Comm'n*, 102 P.3d 937, 943 (Alaska 2004) ("The stare decisis doctrine rests on a solid bedrock of practicality: 'no judicial system could do society's work if it eyed each issue afresh in every case that raised it.' ") (quoting *Pratt & Whitney Canada, Inc. v. United Techs.*, 852 P.2d 1173, 1175 (Alaska 1993)).

3. 587 P.2d at 601.

4. *Zerbe*, 578 P.2d at 601 ("Today, when various branches of government collect and keep copious records concerning numerous aspects of the lives of ordinary citizens, we are unwilling to deny recourse to those hapless people whose lives are disrupted because of careless record keeping or poorly programmed computers. We see no justification for immunizing the government from the damaging consequences of its clerical employees' failure to exercise due care.").

## I. Federal Case Law

When we held in *Zerbe* that an action sounding in "negligent record keeping, rather than false imprisonment"[3] was not barred by Alaska's sovereign immunity statute,[4] we looked to several federal cases interpreting 28 U.S.C. § 2680(h).[5] This does not mean, however, that *Zerbe's* soundness is contingent on agreement with the majority of federal jurisdictions. Although we acknowledged in *Zerbe* that "the federal cases barring recovery under § 2680(h) are in the numerical majority," we explicitly aligned ourselves with the "better reasoned" minority of cases.[6] Thus, the appropriate inquiry is not whether *Zerbe* represents the majority rule, but rather whether its view of sovereign immunity still falls within the broad spectrum of federal interpretations of the FTCA.

### A. The independent duty doctrine

Since *Zerbe* was decided, federal courts have recognized an "independent duty" exception to sovereign immunity. Under this exception, a plaintiff may bring a claim of negligence against the United States if the underlying duty does not derive from the

5. *See id.* at 598, 599 & n. 4 (listing federal cases supporting sovereign immunity); *id.* at 600–01 (discussing several cases allowing actions for negligence against the federal government). Like AS 09.50.250(3), § 2680(h) immunizes the state from "[a]ny claim arising out of ... false imprisonment."

6. 578 P.2d at 599–600. In *Zerbe*, we discussed the "better" reasoning of several federal cases. *Id.* at 600–01. *See, e.g., Quinones v. United States*, 492 F.2d 1269, 1276 (3d Cir.1974) (allowing an action for negligent failure to maintain records to proceed where the resulting harm was defamation); *Gibson v. United States*, 457 F.2d 1391, 1395 (3d Cir.1972) (permitting an action against the government for negligence in failing to prevent a Job Corps trainee from assaulting a Job Corps instructor); *Rogers v. United States*, 397 F.2d 12, 15 (4th Cir.1968) (allowing an action for negligence where the government released the teenage plaintiff from prison, but did not provide transportation home, resulting in the plaintiff being trapped and physically tortured by a third party).

torts listed in § 2680(h).[7] The Supreme Court recognized this exception in *Sheridan v. United States*, but it did not resolve the question whether the FTCA bars negligence claims based on the tortfeasor's status as a government employee.[8]

Since *Sheridan*, the majority of federal jurisdictions that have addressed this issue have declined to permit negligent supervision claims against the government or have suggested that such claims would be barred if they were brought.[9] But the Ninth Circuit, and a district court in the First Circuit, have

concluded that these claims are not barred.[10] The D.C. Circuit, like the United States Supreme Court, has so far refrained from deciding whether the government can be held liable for negligent hiring and supervision.[11] Finally, the Third Circuit has taken an intermediate position, venturing that "even if the United States cannot be held liable for [the tortfeasor's] actions based on its status as his employer, ... it may be without sovereign immunity for negligence by other [government] employees, who were within the scope of their own employment, in not stopping the

7. *See Sheridan v. United States*, 487 U.S. 392, 402, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988) (holding that an action against the United States for injuries that the plaintiff sustained when an off-duty serviceman fired several shots into his automobile was not barred by § 2680(h) because the government had an independent "duty to prevent a foreseeably dangerous individual from wandering about unattended").

8. Unlike Justice Kennedy's concurrence, which advocates a bright-line rule forbidding claims "that the [g]overnment was negligent in the supervision or selection of the employee and that the intentional tort occurred as a result," *id.* at 406, 108 S.Ct. 2449, the *Sheridan* majority explicitly declines to reach the issue: "[b]ecause [the tortfeasor's] employment status is irrelevant to the outcome, it is not appropriate in this case to consider whether negligent hiring, negligent supervision, or negligent training may ever provide a basis for liability under the [FTCA] for a foreseeable assault or battery by a [g]overnment employee." *Id.* at 403 n. 8, 108 S.Ct. 2449. Although Justice Kennedy's position was taken by a plurality in an earlier case, it has never been adopted by a majority of the Supreme Court. *See United States v. Shearer*, 473 U.S. 52, 54–58, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985) (holding, by a plurality, that an action based on negligent supervision of a serviceman who abducted and murdered another serviceman was barred by the FTCA).

9. *See LM ex rel. KM v. United States*, 344 F.3d 695, 699 (7th Cir.2003) (noting that "the government's consent to suit under the FTCA extends to cases claiming an injury that is in part the result of an intentional tort, so long as the government negligently allowed the independent tort to occur in a way that is entirely independent of [the tortfeasor's] employment status") (citations and quotation marks omitted) (alteration in original); *Billingsley v. United States*, 251 F.3d 696, 698 (8th Cir.2001) (concluding that "[t]o find the government liable for negligent hiring and supervision of an employee who commits a tort would frustrate the purpose of § 2680(h)"); *Leleux v.*

*United States*, 178 F.3d 750, 757 (5th Cir.1999) (noting that "*Sheridan* stands for the principle that negligence claims related to a Government employee's § 2680(h) intentional tort may proceed where the negligence arises out of an independent, antecedent duty unrelated to the employment relationship between the tortfeasor and the United States"); *Franklin v. United States*, 992 F.2d 1492, 1499 n. 6 (10th Cir.1993) (stating that "it is doubtful" whether a claim "ultimately derive[d] from the government's employment relationship to the immediate tortfeasors" would be permitted under § 2680(h)); *Talbert v. United States*, 932 F.2d 1064, 1066–67 (4th Cir.1991) (holding that the plaintiff's negligent record keeping claim was barred by the FTCA); *Guccione v. United States*, 847 F.2d 1031, 1037 (2d Cir.1988) (noting that the independent duty doctrine allows "mixed claims of negligence and intentional conduct in the relatively uncommon case in which the negligence alleged was independent of the government's supervision of its employees") (citation and quotation marks omitted); *Verran v. United States*, 305 F.Supp.2d 765, 775–76 (E.D.Mich.2004) (stating that "negligent hiring and supervision claims involving an employee's intentional tort are barred by the FTCA's intentional tort exclusion"); *Acosta v. United States*, 207 F.Supp.2d 1365, 1368–71 (S.D.Fla. 2001) (concluding that federal courts do not have jurisdiction over "negligent supervision, negligent hiring [and] negligent retention" claims against the United States).

10. *See Senger v. United States*, 103 F.3d 1437, 1442 (9th Cir.1996) (holding that § 2680(h) "does not immunize the [g]overnment from liability for negligently hiring and supervising an employee"); *Mulloy v. United States*, 884 F.Supp. 622, 630 (D.Mass.1995) (concluding that "nothing in *Sheridan* logically requires a rule barring all claims alleging negligent hiring and negligent supervision by the government").

11. *See Bembenista v. United States*, 866 F.2d 493, 498 (D.C.Cir.1989) ("We need not reach the more troublesome question whether the government would be liable for the mere negligent

injurious behavior." [12]

In sum, although FTCA case law has evolved significantly since *Zerbe* was decided, and *Zerbe* continues to represent the minority view, the conclusion that the FTCA does not bar negligence claims based on the tortfeasor's employment relationship with the government has not been foreclosed. Because some federal courts still maintain that such claims are not barred, *Zerbe's* position remains plausible in the context of FTCA case law.

## B. False imprisonment cases

Moreover, the vast majority of federal false imprisonment cases involve claims that the plaintiff should never have been arrested at all, rather than that the plaintiff should have been released earlier. Wrongful arrest cases provide little guidance to us in deciding this case because they involve very different policy implications from failure-to-release cases. The decision whether to arrest someone must often be taken on a moment's notice with incomplete information. For that reason, permitting plaintiffs to sue the government for good-faith arrest decisions that later prove to be incorrect could endanger public safety by deterring the police from making proper arrests. Requiring state officials to release inmates on time creates no such danger: If the state officials are keeping accurate records, the inmate's release date is no surprise, and indeed requires no decision at all from prison officials. The public safety implications of releasing the prisoner have presumably been taken into account by the sentencing court.

There appear to be no cases that analyze the false imprisonment provision of § 2680(h) in light of the independent duty exception, and the two cases cited in footnote 39 of the court's opinion provide little guidance on the subject. Both cases involve claims similar to Kinegak's, and both courts conclude that the claims are "essentially . . . for false imprisonment," [13] but neither case discusses the independent duty exception. Because these cases simply assume what they conclude—that a claim based on the failure to release an inmate on time is necessarily a false imprisonment claim—and because the vast majority of federal jurisdictions have not addressed this issue, it is likely that a claim analogous to Kinegak's would be allowed to proceed in some federal jurisdictions. [14] For this reason, the two federal cases concerning failure to release an inmate on time, like FTCA cases generally, have not left *Zerbe* "a remnant of abandoned doctrine." [15]

## II. Legislative History

The legislative history of AS 09.50.250 is more revealing for what has not happened than for what has. As of October 2004 the legislature had amended the statute five times without attempting to override *Zerbe*. [16] It amended the statute again in 2005 [17] while the present case was pending, but again made no attempt to override *Zerbe*. Thus, although it has repeatedly modified the statute, the legislature has done nothing to indicate that *Zerbe* was wrongly decided.

retention and supervision of a medical technician known to be psychologically disturbed.").

12. *Matsko v. United States*, 372 F.3d 556, 561 (3d Cir.2004). *Quinones* has not been overruled by the Third Circuit, and its emphasis on the differing elements of the negligence claim and the tort of defamation could be viewed as an early version of the independent duty doctrine. 492 F.2d at 1276.

13. *Maurello v. United States*, 111 F.Supp.2d 475, 476 (D.N.J.2000); *Puccini v. United States*, 978 F.Supp. 760, 761 (N.D.Ill.1997).

14. *Senger* and *Mulloy* suggest that a claim like Kinegak's could be brought in the Ninth Circuit and the District of Massachusetts if the claim were based on the government's negligence in supervising the employees responsible for keeping records of inmates' release dates. *See Senger*, 103 F.3d at 1442; *Mulloy*, 884 F.Supp. at 630.

15. *State v. Fremgen*, 914 P.2d 1244, 1245 (Alaska 1996).

16. Ch. 30, § 1, SLA 2003; ch. 32, § 9, SLA 1997; ch. 119, § 1, SLA 1992; ch. 57, § 1, SLA 1989; ch. 106, § 5, SLA 1986.

17. Ch. 54, § 2, SLA 2005. The 2005 amendment clarified the state's immunity from certain types of lawsuits involving emergency medical quarantines, and was part of legislation defining "the duties of the Department of Health and Social Services as those duties pertain to public health

## III. More Harm than Good Would Result from Overruling *Zerbe.*

Even if there had been a sea change in federal law, this alone would not be sufficient to overrule *Zerbe.* The second prong of this court's stare decisis rule forbids overruling a prior case unless the court is "clearly convinced ... that more good than harm would result from a departure from precedent." [18] We have applied this standard repeatedly in a number of different areas of law.[19]

The court's half-hearted attempt to address this prong—a single paragraph relegated to a footnote—is both perfunctory and tautological. To support its claim that overruling *Zerbe* would do more good than harm, the court argues that the decision is outmoded in light of Justice Kennedy's rationale in *Sheridan,* and that failing to overrule it "would continue to cause outcomes that are contrary to the legislative requirement that certain categories of torts may not be maintained against the state." [20] The claim that, unlike the majority of the United States Supreme Court, we should adopt Justice Kennedy's view of the independent duty doctrine is no more than a restatement of the court's

argument that *Zerbe* is no longer sound in light of federal case law. Similarly, the claim that *Zerbe* "cause[s] outcomes that are contrary to the legislative requirement that certain categories of torts may not be maintained against the state," [21] is nothing more than a restatement of the court's conclusion that *Zerbe* was wrongly decided.[22] And this conclusion is also unsupported by the state's experience since 1978. Alaska courts have not been faced with a deluge of claims based on prison officials' failure to release inmates on time,[23] and they continue to reject claims arising from the torts listed in AS 09.50.250(3).[24]

If liability for negligence prevented DOC from fulfilling its function, as liability for false arrest might do in the context of law enforcement, overruling *Zerbe* might be beneficial. But when DOC is responsible for releasing a prisoner on a predetermined date, its duties are almost synonymous with avoiding negligence. Such a release, based on a decision made by a sentencing court and kept on file by DOC, presents very little room for discretion: either the prisoner's sentence has ended or it has not.[25] For this reason, there is no set of choices analogous to

and public health emergencies and disasters." *Id.*

**18.** *Fremgen,* 914 P.2d at 1245.

**19.** *See, e.g., Lawson v. Lawson,* 108 P.3d 883, 887–88 (Alaska 2005) (applying both prongs of the court's stare decisis test to a prior decision permitting judicial promulgation of child support rules, and declining to overrule the decision); *State v. Semancik,* 99 P.3d 538, 541–43 (Alaska 2004) (applying both prongs to a previous decision permitting a criminal defendant to challenge on appeal a burglary indictment that failed to identify the defendant's intended crime, and overruling the decision); *State v. Coon,* 974 P.2d 386, 394–97 (Alaska 1999) (applying both prongs to a prior case involving the admission of scientific evidence under Alaska Rule of Evidence 702, and overruling that case).

**20.** Op. at 892 n. 31.

**21.** Op. at 892 n. 31.

**22.** The court echoes this statement elsewhere in its opinion, arguing that maintaining *Zerbe* would prevent courts from effectively enforcing the state's sovereign immunity statute because "retaining state immunity would be useless if plaintiffs could use a different theory to attack conduct that would be traditionally understood as

false imprisonment and nothing more." Op. at 893.

**23.** Only a few cases of this type have arisen since 1978, and these generally involve disputes about the calculation of time off for good behavior, not simple clerical error. *See, e.g., Jackson v. State,* 31 P.3d 105, 108–09 (Alaska App.2001) (construing the statute providing for time off for good behavior to require that it be offset against composite sentences); *see also Charles v. State,* Mem. Op. & J. No. 4762 (Alaska App., September 24, 2003), 2003 WL 22208498, at *1 (rejecting the plaintiff's claim that his time off for good behavior was miscalculated because the court's own calculations suggested a longer period of imprisonment than DOC's calculations).

**24.** *See, e.g., Blackburn v. State, Dep't of Transp. & Pub. Facilities,* 103 P.3d 900, 908 (Alaska 2004) (affirming the superior court's grant of summary judgment for the state on the ground that Blackburn's misrepresentation claim was barred by AS 09.50.250(3)).

**25.** In cases where DOC officials claim that a prisoner has forfeited time off for good behavior by committing an infraction, more room for discretion may be justified, but the present case does not require the court to reach this issue.

proper arrest decisions that could be chilled by imposing liability on DOC for negligently miscalculating inmates' sentences.

Finally, overruling *Zerbe* could do significant harm, because it would eliminate an incentive for DOC to fulfill its duties in a non-negligent manner. As the court's opinion concedes, DOC's conduct in the present case has been "abhorrent," [26] and if the miscalculation had been greater, it "would be even more abhorrent." [27] But, by shielding DOC from liability for negligent record keeping, the court's opinion invites more misconduct. The most likely practical consequence of overruling *Zerbe* is therefore an increase in negligence on the part of DOC—and future miscalculations may involve periods of unjust imprisonment longer than seven days.

In sum, the court's decision to overrule *Zerbe* does not comply with our rule of stare decisis. Changes in federal case law have not rendered *Zerbe* "a remnant of abandoned doctrine," [28] the legislature has made no effort to override the case by statute, and the main foreseeable consequence of abandoning this precedent is an increase in negligent misconduct with regard to DOC's most basic duties. I therefore respectfully dissent.

---

26. Op. at 893.

27. Op. at 893. Although the primary harm from this type of negligence is the prisoner's unjustified loss of freedom, it bears mentioning that the state also experiences harm: in Kinegak's case, the state had to pay the costs of supporting a prisoner for seven extra days.

